The **POSTER EXCHANGE, INC.,** Plaintiff-Appellant,

v.

**NATIONAL SCREEN SERVICE CORPO-RATION et al., Defendants-Appellees.**

No. 29025.

United States Court of Appeals, Fifth Circuit.

March 7, 1972.

Glenn B. Hester, Augusta, Ga., Carl E. Sanders, Atlanta, Ga., Francis T. Anderson, Yeadon, Pa., C. Ellis Henican, Jr., New Orleans, La., for plaintiff-appellant.

E. Smythe Gambrell, Robert S. Sams, Atlanta, Ga., Walter S. Beck, New York City, Tench C. Coxe, Atlanta, Ga. (Motion Picture Distributors), for defendants-appellees.

Before JOHN R. BROWN, Chief Judge, and DYER and INGRAHAM, Circuit Judges.

JOHN R. BROWN, Chief Judge:

Assigning Poster VI to this opinion in this endless litigation [1] assures us that there likely will be a Poster VII but hopefully not a Poster VIII. This is but a rerun of the old scenario that National Screen has alone or by combination with movie producers driven Poster out of the business of supplying accessory advertising materials to local movie exhibitors. Like an old black and white

---

1. The prior cases (Atlanta and New Orleans) are:

Poster I: National Screen Service Corp. v. Poster Exchange, Inc., 5 Cir., 1962, 305 F.2d 647, in which this Court in an opinion written by Judge Gewin affirmed the District Court's denial of National Screen's motion for summary judgment and Poster Exchange's motion for preliminary injunction and said there were issues of fact to be resolved;

Poster II: Poster Exchange, Inc. v. Paramount Film Dist. Corp., 5 Cir., 1965, 340 F.2d 320, in which this Court affirmed the District Court's summary judgment in favor of the film producing companies;

Poster III: Poster Exchange, Inc. v. National Screen Service Corp., 5 Cir., 1966, 362 F.2d 571, in which this Court in an opinion by Judge Tuttle reversed the District Court's summary judgment in favor of National Screen;

Poster IV: Exhibitors Poster Exchange, Inc. v. National Screen Service Corp., 5 Cir., 1970, 421 F.2d 1313, rehearing denied, 427 F.2d 710, cert. denied, 1971, 400 U.S. 991, 91 S.Ct. 454, 27 L.Ed. 2d 439, in which this Court reversed in part summary judgment for Producers and National in the New Orleans litigation; and

Poster V: Poster Exchange, Inc. v. National Screen Service Corp., 5 Cir., 1970, 431 F.2d 334, cert. denied, 1971, 401 U.S. 912, 91 S.Ct. 880, 27 L.Ed.2d 811, in which this Court affirmed (save for attorney's fees) the District Court's award of triple damages against National upon trial on the merits of suit No. 7665 after remand of Poster III.

In addition to reference as Poster II, Poster IV, etc., reference is sometimes made as Op [I], Op [IV], etc., followed by page cite (e. g., Op [IV] 1316 for 421 F.2d 1313, 1316).

soundless serial, some has to be repeated for the new viewer, but mainly one has to rely on exposure to the previous installments for the whole picture. Consequently, this opinion is not produced for one-time viewers. It assumes that to see what this is all about, those concerned must at least look at the rushes from the past. Cf. In re Atlas Sewing Centers, Inc., 5 Cir., 1971, 437 F.2d 607, 609.

That it is not all past, but now very much of the present and the future is the opinion of the Supreme Court in Zenith,[2] handed down after submission of this case.

The District Court granted summary judgment to six major movie producers. The case still pends below as to National Screen.

The current episode began in 1961, shortly after National Screen had announced that it would no longer make standard accessories available to poster-renter jobbers, among whom was Poster.[3]

In the 1940's National Screen had received exclusive licenses from the producers to manufacture and distribute these accessories, but to avoid litigation, National Screen had for many years provided these accessories to local poster-renters. But after the victory of National Screen in Lawlor v. National Screen Service Corp., 3 Cir., 1959, 270 F.2d 146, cert. denied, 1960, 362 U.S. 922, 80 S.Ct. 676, 4 L.Ed.2d 742, it decided that it was no longer necessary to supply its own competitors. So on May 16, 1961, National Screen cut off supplies to all of the poster-renters.

Shortly thereafter, Poster filed a private antitrust action[4] alleging that National Screen was attempting to monopolize the poster distribution business in the Atlanta area. The District Court granted Poster a temporary injunction and denied National Screen's motion for summary judgment. Poster Exchange, Inc. v. National Screen Service Corp., N.D.Ga., 1961, 198 F.Supp. 557. On this appeal (1962) this Court affirmed the denial of summary judgment and sent the case back for trial on the merits. Poster I.

In 1963, shortly before the case was to go to trial, Poster amended its complaint[5] to include five of the producers as defendants.[6] Poster alleged that the granting of the exclusive licenses and the acquiescence in National Screen's cutoff action of 1961 by the producers made them Sherman Act conspirators. The producers moved for and were granted summary judgment. Poster Exchange, Inc. v. National Screen Service Corp., N.D.Ga., 1963, 35 F.R.D. 558, which we affirmed per curiam[7] (1965). Poster I.

2. Zenith Radio Corp. v. Hazeltine Research, Inc., 1971, 401 U.S. 321, 91 S.Ct. 795, 28 L.Ed.2d 77.

3. For details and backgrounds, see Op [IV] 421 F.2d 1314–1315 and Op [V] 431 F.2d 336–337.

4. Suit No. 7665 against National Screen only.

5. Although filed in Suit No. 7665 (note 4, supra), we shall refer to this as the 1963 suit.

6. MGM, Paramount, 20th Century Fox, United Artists and Warner Brothers. Columbia was not then made a party.

7. In the denial of summary judgment to National Screen (Poster I) we went to great lengths to distinguish Lawlor, supra. But in granting summary judgment to the producers in 1963, the District Court found Lawlor and one of its progeny, Vogelstein v. National Screen Service Corp., E.D.Pa., 1962, 204 F.Supp. 591, aff'd, 3 Cir., 1962, 310 F.2d 738, cert. denied, 1963, 374 U.S. 840, 83 S.Ct. 1894, 10 L.Ed.2d 1061, to be controlling. In the appeal before us now Poster has intimated that one of the two prior decisions in our Court must therefore be wrong. Of course, if such were the case, only an en banc Court could rectify this. Although much doubt exists that for different parties, under different circumstances, we should have run so fast on Lawlor as a matter of stare decisis (See Op [IV] 421 F.2d 1315), the results are not necessarily contradictory.

After the action against the producers had been dismissed, National Screen renewed its motion for summary judgment, which was granted by the District Court but reversed by this Court (1966). Poster III.

The case finally went to trial against National Screen alone and the judgment against National Screen was affirmed by this Court (1970). Poster V.

But as in the New Orleans litigation (Op [IV] 1316) the earlier adverse ruling in favor of the producers (Poster II) had little deterrent effect. On February 26, 1969, a few days after Poster had recovered against National Screen in the District Court (in 7665), Poster filed this new action against National Screen and the producers.[8] To this the producers filed for summary judgment on the grounds of (i) statute of limitations, (ii) res judicata and (iii) collateral estoppel. Summary judgment was granted. Poster Exchange, Inc. v. National Screen Service Corp., N.D.Ga., 1969, 306 F.Supp. 491. It was clearly on (i) statute of limitations.[9] Although the Judge went on to speak of (ii) res judicata,[10] we do not believe that this was intended to be—or can now be justified on—the reasoning of the Trial Judge. First, Columbia was not a party to No. 7665. Yet it was granted summary judgment. As to it, res judicata was clearly not available. Second, the Judge reasoned that since Poster had recovered triple damages in No. 7665 (Poster V) from a single overt act, res judicata bars this suit since a plaintiff "cannot be heard to say his damages are different when the act complained of is the same." 306 F.Supp. at 494.

What Poster obtained by its judgment against National Screen goes only to the question of possible double recovery. It is in no sense a shield to an alleged fellow tortfeasor-conspirator. And since this litigation is proof that old cases never die nor fade away (cf. Bros Inc. v. W. E. Grace Manufacturing Co., 5 Cir., 1965, 351 F.2d 208, 209), it may be the part of judicial husbandry to discourage needlessly hasty action and unnecessary appeals to sound a word so far as a substantive basis for the holding of res judicata. In this approach, care must be taken to distinguish statute of limitations situations (and precedents) from res judicata—collateral estoppel problems. Op [IV] 421 F.2d 1317–18. Next, when, as was done here, it is on the pleadings alone, they must be mea-

---

8. Filed as No. 12497, it added Columbia Pictures as a producer defendant to those in 7665 (see note 6, *supra*).

9. "The court's decision on the statute of limitations issue obviates the necessity for a decision on the collateral estoppel—res judicata issues." 306 F.Supp. at 494.

10. "The court's decision on the statute of limitations issue obviates the necessity for a decision on the collateral estoppel-res judicata issues. However, the court notes that the plaintiff has made a recovery of some $450,000.00 against the National Screen Service Corporation in Case No. 7665 in this court. In that case, as well as in this case, summary judgment was granted for the film producer defendants. Poster Exchange, Inc., v. National Screen Service Corp., 35 F.R.D. 558 (N.D.Ga.1963). The granting of summary judgment was affirmed in a per curiam decision by the Fifth Circuit, Poster Exchange, Inc. v. Paramount Film Dist. Corp., 340 F.2d 320 (5th Cir. 1965). Examination of the complaint in Case No. 7665 reveals that it was virtually the same case which plaintiffs have filed in this case. Moreover, plaintiff states, in its motion for preliminary injunction, that this action is " * * * in effect, a continuation of Civil Action No. 7665, commenced in this court on July 17, 1961". In essence, because the issue of the damages resulting from the single overt act involved in this suit has been tried before in No. 7665, the doctrine of res judicata bars this suit. Plaintiff cannot be heard to say that his damages are different, when the act complained of is the same. Norman Tobacco & Candy Co. v. Gillette Safety Razor Co., 295 F.2d 362 (5th Cir. 1961) ; Astron Industrial Associates, Inc. v. Chrysler Motors Corp., 405 F.2d 958 (5th Cir. 1968)."
306 F.Supp. at 494.

sured against the liberality of *Conley*.[11] This means that only such issues as were disposed of in the 1963 orders as to producers (other than Columbia) bar the antitrust plaintiff from pursuing his claims based on conduct within the *Conley* reaches of the complaint by one or more or all of the defendants which covers, as we said in Poster IV, "new [post-1961] illegal conduct, not merely continuing damages from old, and now insulated conduct, in violation of the antitrust laws." Op [IV] 1319. "Left open, however, are actions, if any, which may be established by proof covering post-1961 activities (or non-actions) which substantively are violations of the antitrust laws and the resulting damages therefrom." Op [IV] 1321. In the light of antitrust policies against the grant of immunity for contemporary violations we "hold that significant actions (or non-actions) occurring subsequent to 1961, either alone or in combination with acts which have been completed prior to 1961 except for their consequences, may be the basis for new claims for damages traceable to such significant actions (or non-actions)." Op [IV] 1318.

■ Since for res judicata—collateral estoppel purposes the "causes of action" are not the same, it follows that the analysis is that of collateral estoppel. Whatever issues the Court, on examination of the 1963 suit record, finds necessarily to have been resolved—rightly or wrongly—are no longer open to litigation.[12] As to them, the bar is complete quite apart from the statute of limitations.

But the statute of limitations problem is present with respect to (i) pre-1961 conduct (or non-action) not foreclosed by collateral estoppel and (ii) post-1961 conduct occurring more than four years prior to the 1969 suit (No. 12497).

Here *Zenith, supra,* cuts a big figure. First, whatever expressions we have used from time to time, which might suggest that in antitrust situations there is no such thing as a continuing conspiracy, now must yield their sweeping force. The Supreme Court stated:

"Generally, a cause of action accrues and the statute begins to run when a defendant commits an act which injures a plaintiff's business. See, e. g., Suckow Borax Mines Consolidated, Inc. v. Borax Consolidated, Ltd., 185 F.2d 196, 208 (C.A.9 (1950); Bluefields S. S. Co. v. United Fruit Co., 243 F. 1, 20 (C.A.3 1917), appeal dismissed, 248 U.S. 595, 39 S.Ct. 136, 63 L.Ed. 438 (1919); 2361 State Corp. v. Sealy, Inc., 263 F.Supp. 845, 850 (N.D.Ill.1967). This much is plain from the treble damage statute itself. 15 U.S.C. § 15. In the context of a continuing conspiracy to violate the antitrust laws, such as the conspiracy in the instant case, this has usually been understood to mean that each time a plaintiff is injured by an act of the defendants a cause of action accrues to him to recover the damages caused by that act and that, as to those damages, the statute of limitations runs from the commission of the act. See, e. g., Crummer Co. v. DuPont, 223 F.2d 238, 247–248 (C.A.5 (1955); Delta Theaters, Inc. v. Paramount Pictures, Inc. 158 F.Supp. 644, 648 (E.D.La.1958); Momand v. Universal Film Exchange, Inc., 43 F.Supp. 996, 1006 (Mass.1942), aff'd, 172 F.2d 37, 49 (C.A.1 1948)."

*Zenith, supra,* 401 U.S. at 338, 91 S.Ct. at 806, 28 L.Ed.2d at 92.

■ More importantly, what is emphasized, perhaps for the first time, is that for acts which have long since taken place—and which are in no sense repeated in conjunction with new acts (or

---

11. Conley v. Gibson, 1957, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80; Pred v. Board of Public Instruction of Dade County, Florida, 5 Cir., 1969, 415 F.2d 851.

12. This pertains to pre-1961 conduct alone, not pre-1961 conduct plus post-1961 actions.

non-acts)—the act in effect is "revived" as a basis for later damages under a certain circumstance. That circumstance is the inability of the injured victim to earlier prove with requisite certainty the existence and amount of damages. In that circumstance it is a holding that in antitrust cases subsequent damages have not yet "accrued." They do not "accrue" until they can be reasonably established. The moment the victim can prove such subsequent damages, the statute begins to run leaving four more years in which to assert them. The Court spells this out:

"However, each separate cause of action that so accrues entitles a plaintiff to recover not only those damages which he has suffered at the date of accrual but also those which he will suffer in the future from the particular invasion, including what he has suffered during and will predictably suffer after trial. See, e. g., Farbenfabriken Bayer, A. G. v. Sterling Drug, Inc., 153 F.Supp. 589, 593 (D.C.N.J.1957); Momand v. Universal Film Exchange, Inc., supra, 43 F. Supp. at 1006. Cf. Lawlor v. Loewe, 235 U.S. 522, 536, 35 S.Ct. 170, 59 L. Ed. 341, 349 (1915). Thus, if a plaintiff feels the adverse impact of an antitrust conspiracy on a particular date, a cause of action immediately accrues to him to recover all damages incurred by that date and all provable damages that will flow in the future from the acts of the conspirators on that date. To recover those damages, he must sue within the requisite number of years from the accrual of the action. On the other hand, it is hornbook law, in antitrust actions as in others, that even if injury and a cause of action have accrued as of a certain date, future damages that might arise from the conduct sued on are unrecoverable if the fact of their accrual is speculative or their amount and nature unprovable. Moe Light, Inc. v. Foreman, 238 F.2d 817, 818 (C.A.6 1956); Chicago & N. W. R. Co. v. DeClow, 124 F. 142, 143 (C.A.8 1903);

Culley v. Pennsylvania R. Co., 244 F. Supp. 710, 715 (D.C.Del.1965). Cf. Howard v. Stillwell & Bierce Mfg. Co., 139 U.S. 199, 206, 11 S.Ct. 500, 35 L. Ed. 147, 150 (1891).

In antitrust and treble damages actions, refusal to award future profits as too speculative is equivalent to holding that no cause of action has yet accrued for any but those damages already suffered. In these instances, the cause of action for future damages, if they ever occur, will accrue only on the date they are suffered; thereafter the plaintiff may sue to recover them at any time within four years from the date they were inflicted. Cf. Schenley Industries v. N. J. Wine & Spirit Wholesalers Association, 272 F.Supp. 872, 887–888 (D.C. N.J.1967); Delta Theaters, Inc. v. Paramount Pictures, Inc., supra, 158 F.Supp. at 648–649. Otherwise future damages which could not be proved within four years of the conduct from which they flowed would be forever incapable of recovery, contrary to the congressional purpose that private actions serve "as a bulwark of antitrust enforcement" and that the antitrust laws fully "protect the victims of the forbidden practices as well as the public." Perma Life Mufflers, Inc. v. International Parts Corp., 392 U.S. 134, 139, 20 L.Ed.2d 982, 990, 88 S.Ct. 1981 (1968); Radovich v. National Football League, 352 U.S. 445, 454, 77 S.Ct. 390, 1 L.Ed.2d 456, 463 (1957). See also Lawlor v. National Screen Serv. Corp., 349 U.S. 322, 329, 99 L. Ed. 1122, 1128, 75 S.Ct. 865 (1955)."

*Zenith, supra,* 401 U.S. at 338–340, 91 S.Ct. at 806, 28 L.Ed.2d at 92–93.

With respect to post-1961 actions which substantively are not foreclosed by the 1963 summary judgment, Poster may recover damages for all such acts which occurred within four years of the 1969 suit. As to such acts occurring prior to 1965, it can recover for such damages as could not reasonably have been proved prior to February 26, 1965.

This could conceivably include damages for acts occurring pre-1961 without establishing independent post-1961 acts as a cause.[13]

\* \* \* \* \* \*

■ Good judicial husbandry calls for an effective pretrial management of this case which has now occupied the attention of not less than four trial judges, fifteen Circuit judges and Supreme Court justices twice. While *Conley* allows laxness in pleading, the District Court should require by suitable means that Poster outline in detail what its claim is. The Court should determine as to the parties to the 1963 suit what, if any, issues were necessarily determined in the 1963 summary judgment, Poster II. Then, with precision, Poster should demonstrate what post-1961 acts substantively constitute antitrust violations on theories declared in Poster IV. With respect to such substantive acts occurring prior to February 26, 1965, Poster should show the relevant facts on which to fix the earliest reasonable time or times for which damages for such claim or claims could have been proved to fix the commencement of the limitations period under *Zenith*. Considering the persistent inability of Poster to appreciate the significance of res judicata—collateral estoppel or the difficulties from parrotting the prior complaints in amended ones covering different periods of time and, on the other hand, like persistence by National in asserting contentions now so often rejected by us, it would surely be in order to appoint a special master (F.R.Civ.P. 53), with his allowance to be taxed as costs for an orderly determination of just what remains to be disposed of by summary judgment on the basis of the facts, not just pleadings, or by trial.

The summary judgment must be vacated and the cause remanded for consistent action.

Vacated and remanded.

---

13. Poster perhaps anticipated *Zenith* since in Poster V damages against National were claimed in No. 7665 for four years prior to institution of suit in 1961. Op [V] 431 F.2d 340 n. 17.