The CITY OF EL PASO,
Plaintiff-Appellant,

v.

DARBYSHIRE STEEL COMPANY, INC.,
El Paso Machine & Steel Works, Inc.,
and Robberson Steel, Inc., Defendants-
Appellees.

No. 77–3233.

United States Court of Appeals,
Fifth Circuit.

June 19, 1978.

Rehearing and Rehearing En Banc
Denied Aug. 18, 1978.

Tom Diamond, Larry Baskind, El Paso, Tex., George R. Poehner, Bruce W. Claycombe, Dallas, Tex., John C. Ross, Jr., City Atty., David J. LaBrec, Asst. City Atty., El Paso, Tex., for plaintiff-appellant.

Richard Munzinger, El Paso, Tex., for Darbyshire Steel Co., Inc.

W. C. Peticolas, El Paso, Tex., for El Paso Machine & Steel Works, Inc.

Jack Ratliff, El Paso, Tex., for Robberson Steel, Inc.

Before COLEMAN, AINSWORTH and VANCE, Circuit Judges.

COLEMAN, Circuit Judge.

The City of El Paso appeals from the judgment of the District Court granting the defendants' motion for summary judgment on the ground that the City's antitrust claim was barred by limitations. We affirm.

In the summer of 1968 El Paso voters approved a bond issue to provide funds for the construction of a Civic Center Complex. The City employed architects to design the Complex and represent the City during construction.

By the spring of 1970 the plans were ready for study by general contractors and subcontractors interested in bidding on the job. The defendants, all steel fabricators, submitted a joint bid to the general contractor for the structural steel and steel reinforcing bars for the Civic Center Complex. This combined bid was accepted by the general contractor.

On August 10, 1970, the City signed a contract with the general contractor for construction of the Civic Center. On September 4, 1970, the general contractor signed an agreement with Darbyshire Steel Company for the supply of all the steel and miscellaneous metal products to be used in the construction of the Civic Center Complex.

In May, 1970, the architectural firm handling the project learned that the defendants had worked out a joint effort, represented by the Darbyshire bid. A partner in the architectural firm contacted the *general contractor,* who gave assurances that the steel bids would be competitive. After all bids on the project had been submitted, the City engineers analyzed the steel bid and concluded that it was too high. Despite this analysis, and discussion between the City and its architects of the possibility of requiring rebidding of the job, the City continued negotiations with the general contractor leading to the August 10 contract.

The *extent* of the City's knowledge that the defendants had submitted a joint bid is disputed, but it is perfectly clear that the general contractor knew that the steel bid was the combined effort of the defendants and the City's architect knew of Robberson's participation in the bid by August, 1970. By letter dated August 24, 1970, Robberson informed the architect that it was "part of the joint venture for the structural steel with Darbyshire Steel, El Paso". Furthermore, by April, 1971, city inspectors

had inspected steel for the project supplied by all three defendants.

El Paso delayed filing suit until August 19, 1975, alleging that the defendants conspired to submit a collusive bid on the structural steel required for the Civil Center, in violation of § 1 of the Sherman Act. The City sought treble damages of $1,500,000. The District Court found that the City's cause of action accrued no later than September 4, 1970, the date the defendants contracted with the general contractor, and granted defendants motion for summary judgment on the grounds that the claim was barred by the four year statute of limitations, § 4 of the Clayton Act.

El Paso contends that this was error because the defendants received benefits of the contract (payments for deliveries of steel) until 1974, well within the limitations period. In the alternative, the City argues that the statute was tolled by fraudulent concealment of the conspiracy by the defendants.

██ The theory of continuing benefits, recently reiterated by this Court in *Imperial Point Colonnades Condominium v. Mangurian,* 5 Cir., 1977, 549 F.2d 1029 is inapposite. In *Mangurian,* relied on by appellant, the damage to the plaintiff was incapable of precise proof at the time the contract was signed because future payments under the contract (which also involved an illegal tying arrangement) were periodically adjusted with reference to the Department of Labor's consumer price index. Each collection by the defendants constituted a separate act injurious to the plaintiff and allowed a new cause of action to accrue. In the instant case, the rights and liabilities of the parties were finalized by the contract signed on September 4, 1970. On that date, the price, the quantity, and the delivery schedule were fixed by the terms of the contract. Any damages caused by the alleged conspiracy were provable with certainty on that date.

The Supreme Court has addressed this question of the antitrust statute of limitations:

> "[I]f a plaintiff feels the adverse impact of an antitrust conspiracy on a particular date, a cause of action immediately accrues to him to recover all damages incurred by that date and all provable damages that will flow in the future from the acts of the conspirators on that date. To recover those damages, he must sue within the requisite number of years from the accrual of the action."

*Zenith Radio Corporation v. Hazeltine Research, Inc.,* 401 U.S. 321, 339, 91 S.Ct. 795, 806, 28 L.Ed.2d 77 (1971) (citations omitted).

The Fifth Circuit relied on *Zenith* in holding that under a certain circumstance acts which took place prior to the period of limitations can be "revived" as a basis for later damages:

> "That circumstance is the inability of the injured victim to earlier prove with requisite certainty the existence and amount of damages. In that circumstance it is a holding that in antitrust cases subsequent damages have not yet 'accrued'. They do not 'accrue' until they can be reasonably established. The moment the victim can prove such subsequent damages, the statute begins to run leaving four more years in which to assert them."

*Poster Exchange, Inc. v. National Screen Service Corporation,* 5 Cir., 1972, 456 F.2d 662.

There was no difficulty about proof of damages on September 4, 1970. By expert testimony the value of the steel in a freely competitive market could have been established. The contract named the price of the steel in the allegedly restricted market created by the defendants' alleged conspiracy. The difference between the two could have been established with reasonable certainty. In the words of *Zenith,* the City of El Paso felt an "adverse impact" on September 4, damages were provable on that date; therefore, the City had four years from that date, until September 4, 1974, in which to file its antitrust action. No suit was filed until August 19, 1975, nearly a year late.

Appellant's second contention that the statute of limitations was tolled by the defendants fraudulent concealment of the conspiracy is without merit. The evidence shows several occasions on which either the architect or the City itself was notified that Darbyshire was working in concert with the other defendants to provide the general contractor with the steel requirements of the Civic Center Complex. In fact, it appears to have been common knowledge among the parties to the construction project that the defendants were working together. Furthermore, no evidence whatsoever exists on the record that any of the defendants fraudulently concealed the joint nature of the bid. The statute of limitations was not tolled by fraudulent concealment. The City's cause of action expired four years from September 4, 1970.

AFFIRMED.