**TEXAS UTILITIES COMPANY and Chaco Energy Company, Plaintiffs,**

v.

**SANTA FE INDUSTRIES, INC., et al., Defendants.**

**No. CIV–82–1419 C.**

United States District Court, D. New Mexico.

March 11, 1985.

On Motion to Dismiss Dec. 16, 1985.

M.D. Sampels, Nancye L. Bethurem, Worsham, Forsythe, Sampels & Wooldridge, Dallas, Tex., Gordon B. Spivack, Jonathan M. Jacobson, Elinor R. Hoffmann, Lord, Day & Lord, New York City, Charles D. Olmsted, Lindsay A. Lovejoy, Stephenson, Carpenter, Crout & Olmsted, Santa Fe, N.M., for plaintiffs.

John R. Cooney, Allen C. Dewey, Jr., Peter J. Adang, Zachary L. McCormick, Modrall, Sperling, Roehl, Harris & Sisk, P.A., Albuquerque, N.M., Gus Svolos, Chicago, Ill., Edgar Keltner, Jr., Hudson, Keltner, Smith, Brants & Sparks, Fort Worth, Tex., for defendants.

## MEMORANDUM OPINION

CAMPOS, District Judge.

This case is before the Court on a Motion to Dismiss Price Fixing Claims, pursuant to Fed.R.Civ.P. 12(b)(6), filed by Defendants Santa Fe Industries, Inc. ("SFI"), The Atchison, Topeka and Santa Fe Railway Company ("ATSF"), Santa Fe Mining, Inc. ("SFM"), and Hospah Coal Company ("Hospah"). Having carefully considered the parties' briefs, the Complaint, and the relevant law, the Court finds and concludes that the Motion is not well-taken and should be denied.

---

1. Throughout this Opinion, the Court will refer to the Amended Complaint as "the Complaint." The remaining Defendants after Thercol and

This case has a complex procedural background; it is the consolidation of three federal district court cases in New Mexico and the Northern District of Texas. A state lawsuit was also filed in New Mexico. The record of this litigation, which is only in its "first wave" of discovery, is voluminous. The Court will only discuss aspects of the case which are relevant to the current motion to dismiss.

On December 18, 1981, Plaintiffs Texas Utilities Company ("TU") and its subsidiary, Chaco Energy Company ("Chaco") filed suit against SFI, its two subsidiaries, SFM and AT & SF, Thercol Energy Company ("Thercol") and Peabody Coal Company ("Peabody"). The Court dismissed Thercol and Peabody January 18, 1983 pursuant to a settlement. Hospah, another SFI subsidiary and an alleged co-conspirator in the Complaint, was added as a Defendant after the lawsuit was transferred to this District from the Northern District of Texas.

It is undisputed that for purposes of a motion to dismiss for failure to state a claim the material allegations of the complaint must be viewed as if they were true. *Jenkins v. McKeithen*, 395 U.S. 411, 421, 89 S.Ct. 1843, 1848, 23 L.Ed.2d 404 (1969); *Dewell v. Lawson*, 489 F.2d 877, 879 (10th Cir.1974); *Franklin v. Meredith*, 386 F.2d 958, 959 (10th Cir.1967). "It is axiomatic that a complaint should not be dismissed unless 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief.'" *McLain v. Real Estate Board of New Orleans, Inc.*, 444 U.S. 232, 246, 100 S.Ct. 502, 511, 62 L.Ed.2d 441 (1980) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)).

The pertinent "facts" of the Complaint[1] disclose that from 1974 until the date the lawsuit was filed, "Defendants and Co-conspirators entered into contracts and engaged in a continuing combination and conspiracy in unreasonable restraint of interstate trade and commerce in violation of

Peabody's dismissal, SFI and all its subsidiaries and divisions, will be referred to collectively as "the Santa Fe Defendants."

Section 1 of the Sherman Act (15 U.S.C. § 1)." Complaint, ¶ 24. In Counts I and IV of the Complaint, which charge violations of 15 U.S.C. § 1 and N.M.Stat.Ann. § 57-1-1 (1978),[2] Plaintiffs allege a continuing conspiracy to fix, maintain, and stabilize the price and other terms of coal rights in the San Juan Basin Area of New Mexico and to restrict competition in the production and sale of coal from that area.

The Section 1 violations consisted of continuing contract negotiations and contractual arrangements imposed by Defendants and Co-conspirators on Plaintiffs and a continuing understanding and concert of action among the Defendants and Co-conspirators, the substantial terms of which have been and are:

(a) to fix, maintain and stabilize the price of coal rights in the San Juan Basin Area;

(b) to restrict competition in the production and sale of coal from the San Juan Basin Area; and

(c) to refuse to negotiate with Plaintiffs on any terms other than those agreed to among the Defendants and Co-conspirators.

Complaint, ¶¶ 25, 37.

Plaintiffs charge that:

*[d]uring the period of time covered by this Complaint,* the Defendants and Co-conspirators, in the course of forming and for the purpose of effectuating the aforesaid contracts, combination and conspiracy, have done, among other things, the following:

(a) fixed the royalty and other payments to be made by Plaintiffs at artificially and unreasonably high levels;

(b) the Santa Fe Defendants prevented Plaintiffs from obtaining or providing rail transportation to and from the San Juan Basin Area on reasonable terms;

(c) imposed a limitation on the quantity of coal that Plaintiffs could sell to third parties;

(d) agreed to penalize Plaintiffs for selling coal to third parties by requiring additional royalties on such sales;

(e) agreed to discourage Plaintiffs from cutting prices on sales to third parties by calculating the additional royalty payments for such sales at the "prevailing market price" rather than the actual sales price; and

(f) refused to negotiate with Plaintiffs on terms other than those agreed to among the Defendants and Co-conspirators.

Complaint, ¶¶ 26, 38 (emphasis added).

Plaintiffs attached to the Complaint copies of four agreements between Chaco and Thercol signed January 26, 1977. Complaint, Exhibits B, C, D, E. Plaintiffs also appended a copy of a coal lease between Hospah and Chaco dated April 15, 1977. Complaint, Exhibit F. The base royalties provided for in the price terms were to be escalated by a formula which was dependent on annual revisions of the Implicit Price Deflator for the gross national product by a government agency. Complaint, Exhibit F, § 5; Complaint, Exhibits C & E, § 24. The Hospah-Chaco Coal Lease provided for revisions of the quantity schedule (Schedule A); the revision calculations were to be made by December 31, 1977. Complaint, Exhibit F, § 8. Apparently, these revisions were completed in Modification No. 1 of the lease dated February 12, 1981, but "effective April 15, 1977." Complaint, Exhibit H, ¶ 1.20. The Hospah-Chaco Coal Lease provides for subsequent revisions of the quantities of coal mined. Plaintiffs have not alleged that there have been other revisions besides Modification No. 1.

**2.** This statute states:

A. Every contract, agreement, combination or conspiracy in restraint of trade or commerce, any part of which trade or commerce is within this state, is hereby declared to be unlawful.

B. Every contract, agreement, combination or conspiracy which controls the quantity, price or exchange of any article of manufacture, product of the soil or mine or any goods or services in restraint of trade is hereby declared to be unlawful.

N.M.Stat.Ann. § 57-1-1 (1978). N.M.Stat.Ann. § 57-1-3 (1978) provides for civil liability for restraint of trade. Counts I and IV will be referred to hereinafter as "Section I claims."

For Defendants' past antitrust violations,[3] Plaintiffs ask for treble damages. The future relief requested is injunctive because of the impracticability of "reasonably" estimating "the full amount of damages that will be incurred by Plaintiffs over the entire terms of their contracts with Hospah and Thercol." Complaint, ¶ 70.

Defendants have denied any wrongdoing, but have also moved to dismiss "all price-fixing claims because they are barred by the applicable statute of limitations." Defendants assert that Plaintiffs' demands for equitable relief are likewise barred by laches.

Section 4B of the Clayton Act, 15 U.S.C. § 15b, sets a four-year limitation on private federal treble damage actions: "[a]ny action to enforce any cause of action under sections 15, 15(a) or 16(c) of this title shall be forever barred unless commenced within four years after the cause of action accrued." Since the contracts which contained the asserted illegally-fixed coal prices were all executed more than four years before the lawsuit was filed, Defendants move for dismissal of the price-fixing claims.

█ Unlike practice under Code pleading, under the modern rules of procedure parties may raise the defense of limitations "by motion to dismiss when the time alleged in the complaint shows that the action was not brought within the statutory period." J. Moore, Moore's Federal Practice, ¶ 12.10 at 2314 (2d ed. 1984); *Rohner v. Union Pacific Railroad*, 225 F.2d 272 (10th Cir.1955). *See also Kaiser Aluminum and Chemical Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045 (5th Cir.1982), *cert. denied*, 459 U.S. 1105, 103 S.Ct. 729, 74 L.Ed.2d 953 (1983) (dismissal of antitrust case on statute of limitations grounds affirmed). Plaintiffs allege a course of conduct which illegally restrained trade "[b]eginning at least as early as 1974 ... *and continuing thereafter up to and including the date of the filing of this

*Complaint."* Complaint, ¶ 24 (emphasis added). It is not clear from the Complaint that all price-fixing activities occurred beyond the permissible four-year period. Moreover, Plaintiffs rely on two theories to defeat the statute of limitations defense concerning the 1977 contracts: continuing conspiracy and the speculative nature of the damages in this lawsuit. This is not a case, therefore, in which the Court can decide the limitations question on a motion to dismiss.

Both the continuing violation exception to Section 4B of the Clayton Act, which originated in *Hanover Shoe, Inc. v. United Shoe Machinery Corp.*, 392 U.S. 481, 88 S.Ct. 2224, 20 L.Ed.2d 1231 (1968) and *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 91 S.Ct. 795, 28 L.Ed.2d 77 (1971), and the speculative damage exception, which *Zenith* also established, overcome statute of limitations defenses in antitrust cases. Some courts have intertwined the two exceptions. In *City of El Paso v. Darbyshire Steel Co.*, 575 F.2d 521 (5th Cir.1978), *cert. denied*, 439 U.S. 1121, 99 S.Ct. 1033, 59 L.Ed.2d 82 (1979), the Fifth Circuit Court of Appeals held that application of one version of the continuing violation exception, the continuing benefits exception (receipt of contract benefits is a continuing violation under antitrust law), was contingent on whether damages were speculative or unprovable. If the damages were "provable with certainty" at the time the contract was executed, the continuing benefits exception did not apply. *See* discussion in *Kaiser Aluminum and Chemical Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1052–1054 (5th Cir. 1982), *cert. denied*, 459 U.S. 1105, 103 S.Ct. 729, 74 L.Ed.2d 953 (1983). In contrast with this definition of the continuing conspiracy exception, other courts have viewed the exception broadly. *E.g., United States v. Inryco*, 642 F.2d 290 (9th Cir.1981), *cert. dismissed*, 454 U.S. 1167, 102 S.Ct. 1045, 71 L.Ed.2d 324 (1982); *see* discussion in *In re

---

**3.** In addition to Count I, Counts II and III are monopolization claims brought under 15 U.S.C.

§ 2.

*New Mexico Natural Gas Antitrust Litigation,* 1982–1 Trade Cas. ¶ 64,685 at 73,-724 notes 17 and 18 (D.N.M.1982).

The Tenth Circuit has not squarely addressed the question of what constitutes a continuing conspiracy that will toll Section 4B of the Clayton Act. Plaintiffs' Complaint and Memorandum in Opposition to Defendants' Motion to Dismiss allege "facts" which would establish a continuing conspiracy under either view of this exception.

Since the 1977 contracts were all attached to the Complaint, and referred to by both parties in their memoranda concerning the speculative damages exception, the Court is seriously considering treating this part of Defendants' Motion to Dismiss as a motion for summary judgment pursuant to Fed.R.Civ.P. 12(b)(6). The Court hereby formally notifies all parties that they will have twenty (20) days from the date of filing of this Memorandum Opinion and Order to present any additional material which relates to the speculative damages exception and which is "made pertinent to such a motion by Rule 56." Fed.R.Civ.P. 12(b)(6); *see Prospero Associates v. Burroughs Corp.,* 714 F.2d 1022 (10th Cir. 1983).

An order will be entered in conformity with this Memorandum Opinion.

## ON MOTION TO DISMISS

This case is currently before the Court on Defendants' motion to dismiss, which the Court has treated as a motion for partial summary judgment. Having carefully considered the parties' memoranda, the exhibits submitted therewith, the record of this case, and the pertinent law, the Court finds and concludes that Defendants' motion should be denied.

This is an antitrust case filed December 18, 1981. Plaintiffs Texas Utilities Company ("TUC") and its subsidiary, Chaco Energy Company ("Chaco") sue Santa Fe Industries, Inc. ("SFI") and its three subsidiaries, The Atchison, Topeka and Santa Fe Railway Company ("ATSF"), Santa Fe Mining, Inc. ("SFM") and Hospah Coal Company ("Hospah") for various violations of 15 U.S.C. §§ 1 and 2. There are also some state and common law claims irrelevant to this motion. In Count I of the Amended Complaint, Plaintiffs allege that Defendants participated in a continuing conspiracy to fix, maintain, and stabilize the price and other terms of coal rights in the San Juan Basin area of New Mexico and to restrict competition in the production and sale of coal from that area, all in violation of 15 U.S.C. § 1. At issue are a coal lease between Chaco and Hospah dated April 15, 1977 and four January 26, 1977 agreements between Chaco and Thercol Energy Company, a defendant who has been dismissed pursuant to a settlement.

Defendants filed a motion to dismiss Plaintiffs' price-fixing claims because they were time barred. They argued that since the contracts which contained the allegedly illegally fixed coal prices were executed more than four years before Plaintiffs filed suit, 15 U.S.C. § 15b dictated that these claims should be dismissed. The Court ruled that Plaintiffs' Complaint contained "facts" which would establish a continuing conspiracy exception to the statute of limitations. This portion of Defendants Fed.R. Civ.P. 12(b)(6) motion was therefore denied.

In the memoranda submitted in support of or in opposition to Defendants' dismissal motion, both parties presented matters outside the pleading concerning the "speculative damages exception" to 15 U.S.C. § 15b. The Court notified the parties that it was giving some thought to treating this part of Defendants' motion as a motion for summary judgment pursuant to Fed.R. Civ.P. 12(b). It gave the parties an opportunity to present additional material pertinent to summary judgment on this issue.

In *Zenith Radio Corp. v. Hazeltine Research, Inc.,* 401 U.S. 321, 91 S.Ct. 795, 28 L.Ed.2d 77 (1971), the Supreme Court ruled that the Plaintiff in an antitrust case may recover damages occurring within the statutory limitations period that are the result of conduct occurring prior to that period, if at the time of the conduct, those damages

were speculative, uncertain, or incapable of proof.

In antitrust and treble-damage actions, refusal to award future profits as too speculative is equivalent to holding that no cause of action has accrued for any but those damages already suffered. In these instances, the cause of action for future damages, if they ever occur, will accrue only on the date they are suffered; thereafter the plaintiff may sue to recover them at any time within four years from the date they were inflicted.

*Id.* at 339, 91 S.Ct. at 806 (citations omitted). *See also In re New Mexico Natural Gas Antitrust Litigation,* 1982–1 Trade Cas. ¶ 64,685 at 73,723–73,724 (D.N.M. 1982). Assuming Defendants' liability, the issue before the Court will be whether Plaintiffs' damages within the statutory limitations period were speculative, uncertain, or unprovable before that period. The question now is whether there is a genuine issue of material fact concerning the speculative nature of Plaintiffs' damages due to the alleged price-fixing so that Defendants' motion should be denied.

■ Plaintiffs assert that they were injured by the price-fixing conspiracy both as a customer and a competitor, because Plaintiffs intended to consume coal in their utility operations *and* to resell any excess coal they mined to non-parties. As a customer, their damages would be the amount of overcharge resulting from the unlawful combination. *Hawaii v. Standard Oil Co.,* 405 U.S. 251, 92 S.Ct. 885, 31 L.Ed.2d 184 (1972). As a competitor, they claim lost profits from the resale of coal had there been no conspiracy. *King & King Enterprises v. Champlin Petroleum Co.,* 657 F.2d 1147 (10th Cir.1981), *cert. denied* 454 U.S. 1164, 102 S.Ct. 1038, 71 L.Ed.2d 320 (1982). The Court makes no comment on the possibly conjectural or duplicative nature of this latter damage claim. It nevertheless does not accept Defendants vehement argument that this second formula is an improper measure of damages in a price-fixing case. Under the Clayton Act, a Plaintiff may recover for any injury to his business or property caused by a defend-

ant's antitrust violation. 15 U.S.C. § 15. Even so, for purposes of this decision, the Court has focused on the first method of computing Plaintiffs' damages due to the asserted combination to set prices and other terms to coal rights in the San Juan Basin, without estimating the viability of Plaintiffs' claims for lost profits.

Plaintiffs have submitted evidence to support their position that the prices they had to pay for coal under the contracts were indeterminable at the time these contracts were made, and that the prices only became certain during the statutory limitation period. Section 5(c)(ii) of the Hospah-Chaco coal lease sets out this formula for calculating the royalty payments Chaco is to pay Hospah twice annually for at least a thirty-five-year period:

Prior to each Calendar Year, Hospah with the concurrence of Chaco shall determine the Royalty Rate for such Calendar Year by estimating the Deflator for such Calendar Year. When the Department of Commerce, or any successor agency, determines the actual Deflator for such Calendar Year, Hospah with the concurrence of Chaco shall redetermine the Royalty Rate for such Calendar Year. If the estimated Deflator was less than the actual Deflator, Chaco shall make an adjustment payment to correct for the difference in accordance with Section 6; if the estimated Deflator was more than the actual Deflator, Hospah shall either credit Chaco or make an adjustment payment to correct for the difference in accordance with Section 6.

Coal Lease, Amended Complaint, Ex. F. The Chaco-Thercol agreements contained similar provisions. *See* Joint Development and Operating Agreement §§ 24, Complaint, Exs. C, E. The royalty payments fluctuated because they were based on the implicit price deflator ("IPD") of the gross national product for each calendar year. According to the affidavit of Chaco's president, "the current royalty level is $.37206 per million Btu's in contrast to the rate of $.22262 per million Btu's for the first payment under the lease in July 1977, reflect-

ing an increase of 67.1% in the royalty level." Paragraph 10, Affidavit of Michael D. Spence, attached to Plaintiffs' Supplemental Memorandum. Plaintiffs argue that until the Department of Commerce calculates the IPD, which is based on the performance of the economy, the royalty rate cannot be calculated.

Additionally, Plaintiffs maintain that Defendants were aware of the indeterminate nature of the royalty payments. In an opinion letter discussing the lease, Defendants' auditors wrote to SFI's president: "[W]e do not believe that the fair value of the assets exchanged can reasonably be measured for financial reporting purposes ... [because] [t]he ultimate quantities and Btu content of the coal are unknown ... [and because] [t]he ultimate royalty rate is unknown because it is dependent upon the implicit price deflator of the gross national product." May 6, 1977 Price Waterhouse letter, Sampels Affidavit, Ex. 3–C.

Plaintiffs also argue that because Modification No. 1 to the lease, executed February 12, 1981, revised the scheduled quantities of coal against which Chaco's royalty payments would be measured, the minimum amount of coal Plaintiffs were required to pay for within the statutory period was unknown in 1977.

Without describing the rest of Plaintiffs' evidence and arguments, and without discussing Defendants' rebuttals, additional contentions, and the materials they have filed, the Court finds and concludes on the basis of the matters already treated in this Opinion, that there are genuine issues of material fact concerning the speculative nature of Plaintiffs' damages at the time the contracts were entered into so that Defendants' motion should be denied.

This case is still in the "first wave" of discovery. It is a consolidation of three federal district court cases; at the request of the parties, the Court has appointed a special master to supervise discovery matters. Discovery will be lengthy and voluminous. Plaintiffs have reserved their right to move for partial summary judgment on the speculative damages issue when discovery is closed. This decision does not prevent them from filing such a motion. An order will be entered denying Defendants' motion.