■ TRACY GAMELL, an Infant, by Her Guardian ad Litem EUGENE GAMELL, et al., Respondents, v. MOUNT SINAI HOSPITAL et al., Appellants.— In this medical malpractice action, a judgment was entered in favor of defendant Dr. Rovinsky, but in favor of plaintiffs against defendant Mount Sinai Hospital, upon a

jury verdict, and, on a prior appeal, this court affirmed the judgment as to Dr. Rovinsky, but reversed it as to the defendant hospital and granted a new trial (*Gamell* v. *Mount Sinai Hosp.*, 34 A D 2d 981). Now, defendants appeal, as limited by their briefs, from so much of an order of the Supreme Court, Kings County, dated April 18, 1972, as, after hearings conducted as a result of two motions by plaintiffs for a new trial as against defendant Dr. Rovinsky, (1) granted the motions " on the grounds that certain jurors on the *voir dire* examination failed to disclose material pertinent information, and failed to respond truthfully, or failed to properly answer questions propounded upon *voir dire* " and (2) directed that the new trial be against both defendants " on the entire case" the decision granting a new trial as to the hospital stated that the new trial as against the hospital was to be " focused directly on the hospital's alleged independent negligent acts" (*Gamell* v. *Mount Sinai Hosp.*, 34 A D 2d 981, 983, *supra*). Order reversed insofar as appealed from, on the law and the facts, without costs, and motions denied. In our opinion, the evidence adduced at the hearings was insufficient to justify a determination that juror No. 1 (Fishman), on *voir dire* of the prospective jurors, withheld information that her nephew and niece were members of the medical profession and that therefore she would not vote against defendant Dr. Rovinsky because of such relationship. With respect to the withholding of information by juror No. 12 (Berge) that he had a granddaughter who was retarded, we do not believe that the withholding of that information was prejudicial insofar as plaintiffs were concerned. Since the gravamen of the action was the alleged negligence of defendants in causing the mental retardation of the infant plaintiff, any bias Berge might have because of his granddaughter's condition would, in all likelihood, be favorable to plaintiffs (*Graves* v. *Bednar*, 171 Neb. 499; 66 C. J. S., New Trial, § 22). If certain members of the jury panel withheld pertinent information during the *voir dire* examination, as plaintiffs allege, plaintiffs were aware of this almost two years before this court decided the appeal from the judgment in their favor. Yet they did not institute the first of their two motions for a new trial until more than three months after that appeal was decided. Such conduct, in our opinion, is sufficient to defeat the granting of the relief requested on plaintiff's motions. A party seeking a new trial may not withhold his application therefor, hoping for favorable disposition on appeal, and, if disappointed, only then move for such relief. Such conduct would circumvent the appellate procedure prescribed by the CPLR (*Empire Crafts Corp.* v. *Grace China Co.*, 40 Misc 2d 957, affd. 20 A D 2d 851). The evidence adduced at the hearings indicates that the post-trial attack upon both the composition and verdict of the jury was orchestrated by one of the female jurors in collaboration with the parents of the infant plaintiff. Subsequent to the trial, at least two trial jury " reunion " parties were held at this juror's home, one of which was attended by the father of the infant plaintiff. At the hearing, this juror voiced a strong desire that the child should " get a lot of money". The record also reveals that jurors were invited to the child's parents' home and were importuned to furnish statements challenging the impartiality of some of their colleagues and controverting the accuracy of the verdict in favor of defendant Dr. Rovinsky. In our opinion, public policy opposes such probing of motivations which inhere in a jury's verdict. In the absence of good cause, jurors should be protected against posttrial efforts to " browse among their thoughts " in an effort to invalidate their verdict (*Hacker* v. *Statman*, 105 N. J. Super. 385, 397). It is true that no settled rule bars extrajudicial posttrial disclosures by a juror of his own views as to what transpired during a trial and during jury deliberations. However, we voice strong disapproval of the

posttrial investigations of jurors and incursions into their private relationships during the trial, in the hope of discovering something to impeach their verdict. Such practices are condemned, whether they be conducted by an attorney, an unsuccessful litigant, or by one or more of the trial jurors (see *State of New Jersey* v. *La Fera,* 42 N. J. 97). "Let it once be established that verdicts solemnly made and publicly returned into court can be attacked and set aside on the testimony of those who took part in their publication and all verdicts could be, and many would be, followed by an inquiry in the hope of discovering something which might invalidate the finding. Jurors would be harassed and beset by the defeated party in an effort to secure from them evidence of facts which might establish misconduct sufficient to set aside a verdict. If evidence thus secured could be thus used, the result would be to make what was intended to be a private deliberation, the constant subject of public investigation — to the destruction of all frankness and freedom of discussion and conference" (*McDonald* v. *Pless,* 238 U. S. 264, 267–268; see, also, *State of New Jersey* v. *Athorn,* 46 N. J. 247). Munder, Acting P. J., Latham, Gulotta, Brennan and Benjamin, JJ., concur.