Esta S. KATZ, as Administratrix of all the personal property, goods, chattels and credits which were of Benna H. Katz, deceased, Plaintiff,

v.

ELI LILLY & CO., Defendant.

Nos. 75 C 1244, 78 C 165.

United States District Court, E. D. New York.

Nov. 29, 1979.

Jerome Edelman, P.C., Brooklyn, N. Y., by Abraham Beital, for plaintiff.

Dewey, Ballantine, Bushby, Palmer & Wood, New York City, by Russel H. Beatie, Jr., New York City (Laurel A. Esterlein and John Patrick Deveney, New York City, of counsel), for defendant.

## MEMORANDUM AND ORDER

NEAHER, District Judge.

Plaintiff in this diversity action for alleged wrongful death has moved to quash discovery subpoenas and vacate notices of deposition served by defendant on third persons claimed to have information relevant to the defense of the action. As will shortly appear, the motion presents a novel—and possibly crucial—question which implicates two important public policies seemingly in conflict: the federal interest in ascertaining the truth in litigation in federal courts and the State of New York's interest in protecting the privacy of jury deliberations in its courts. For the reasons which follow, the court is of opinion that the asserted conflict is more apparent than real and that considerations of truth and fairness will be better served by allowing the discovery sought. Plaintiff's motion to vacate the notices of deposition and quash the subpoenas is therefore denied.

This litigation was originally commenced in 1975 by Benna H. Katz, the present plaintiff's daughter. The complaint (75 C 1244) alleged that prior to the daughter's birth in 1953, her mother (now plaintiff in 78 C 165) was prescribed the drug diethylstilbestrol ("DES") by her physician. When plaintiff's daughter reached the age of 18, it was discovered that she had adenocarcinoma of the vagina. The daughter's suit was subsequently brought against Eli Lilly & Co., as a manufacturer of DES, seeking to recover $5,000,000 damages on claims of breach of warranty and negligence in testing and distributing the drug to her mother in 1953. Upon the daughter's death in 1977 the present complaint was filed by her mother, as administratrix, seeking the same amount of damages.

While pretrial discovery was proceeding in this litigation, a similar action against the defendant (hereinafter "Lilly"), captioned *Joyce Bichler v. Eli Lilly & Company*, pending in the New York Supreme Court, Bronx County, came to trial in May 1979. After some seven weeks of trial, the jury on July 16, 1979, returned a verdict against Lilly in the amount of $500,000. The judgment entered on that verdict is presently on appeal to the Appellate Division of the Supreme Court.

At the close of the *Bichler* trial, the trial justice instructed the jurors regarding post-trial discussion of the case, stating:

> "It's entirely up to you whether you wish to discuss the deliberations with anybody at all. You are not obligated to. If you do not wish to, please don't hesitate to refrain from saying anything. However, on the other hand, if it is your desire to talk about the case to anyone, you are free to do so, as well."

Thereafter, counsel for Lilly contacted one of the jurors, Mrs. Margaret M. Donnelly, and asked whether she would be willing to discuss the case and the jury's deliberations with Lilly's attorneys. Mrs. Donnelly consented and ultimately made certain revelations suggesting that the verdict was reached by compromise: she allegedly stated that her vote for liability was conditioned on the understanding that the damages awarded against Lilly would be reduced by averaging the award thought proper by each juror. The jury allegedly followed this procedure in reaching the verdict. Mrs. Donnelly's disclosures apparently also led Lilly's counsel to believe that another juror, Mrs. Willie E. Bowman, had information relevant to the question of jury compromise, which a subsequent interview with Mrs. Bowman confirmed.

Fearing the collateral estoppel effect of the *Bichler* judgment on aggregate liabilities in Lilly's DES cases [1]—said to be several billion dollars nationwide—and seizing on what they believe is a defense to its assertion in those cases including this one, Lilly's counsel attempted to reduce Mrs. Donnelly's information to affidavit form. She refused, however, apparently on the ground that she wished not to become involved. Consequently, Lilly's counsel served notices of deposition for Mrs. Donnelly and Mrs. Bowman on plaintiff's counsel in this action, and subpoenas for their appearance were issued by the Clerk of this Court. Mrs. Bowman was served with a subpoena on September 17, 1979, but Mrs. Donnelly could not be served.

On September 18, 1979, the trial justice in the *Bichler* case convened a meeting of counsel to discuss a telephone call from Mrs. Donnelly complaining of harassment. After hearing the parties, the trial justice barred further contact between Lilly's counsel and all members of the *Bichler* jury until resolution by this court of the issues involved in the proposed depositions in the litigation pending here. Accordingly, pursuant to an understanding reached by counsel after a conference before this court on September 21, 1979, plaintiff in this action has moved under Rules 26 and 45, F.R. Civ.P., for an order quashing the subpoenas directed to Mrs. Bowman and Mrs. Donnelly and vacating the notices to take their depositions.

Turning now to the novel questions of law and policy raised by plaintiff's motion, one point should be made unmistakably clear at the outset. The court's consideration of those questions is premised upon the representation of Lilly's counsel that the depositions of the jurors in the *Bichler* case are not sought for the purpose of impeaching or collaterally attacking the *validity* of the *Bichler* verdict as the verdict in that case. If it were otherwise, plaintiff's motion would have to be granted in all respects, since State and federal law would ineluctably bar the use of a juror's testimony or statements for such a purpose.[2] The court is proceeding here upon the understanding that the sole question to be determined is whether the testimony of the *Bichler* jurors may be taken now as third-party witnesses in order to preserve it for possible use at the trial of this action should plaintiff seek to rely upon the *Bichler* judgment for collateral estoppel effect.

Were it not for the novelty of the context, the broad scope of discovery afforded under the Federal Rules of Civil Procedure would ordinarily allow the depositions Lilly seeks. "[A]ny matter, not privileged, which is relevant to the subject matter" is fair game for discovery. Rule 26(b)(1), F.R. Civ.P. And as Professor Moore points out, "relevance is not to be measured by the

1. One such case, commenced a week after the *Bichler* verdict was publicized, specifically alleges that verdict as proof of "judicial facts under the doctrine of estoppel . . . per findings adverse to defendant . . . ." *Kinley v. Eli Lilly and Company* (Minn.Dist.Ct., 4th Jud.Dist.).

2. Depositions may not be taken under the federal discovery rules, moreover, for the purpose of use in a pending State action. See, *e. g., Bacharach v. General Investment Corp.,* 31 F.Supp. 84 (S.D.N.Y.1940); *Empire Liquor Corp. v. Gibson Distilling Co.,* 2 F.R.D. 247 (S.D.N.Y.1941), *cited in* 4 Moore's Federal Practice ¶ 26.54 at 104–05 n. 2 (2d ed. 1979).

precise issues framed by the pleadings." 4 Moore's Federal Practice ¶ 26.56[1] at 26–120 (2d ed. 1979).

█ Although plaintiff's complaint does not mention the *Bichler* case, her memorandum of law on this motion plainly discloses her intention to urge the collateral estoppel effect of the *Bichler* judgment at the trial of this case. This, of course, plaintiff would be in a position to do under New York law, which is controlling in this diversity action.[3] Under New York law, mutuality of estoppel is a dead letter. *B. R. DeWitt, Inc. v. Hall,* 19 N.Y.2d 141, 278 N.Y.S.2d 596, 225 N.E.2d 195 (1967). Thus, a plaintiff in a second action may use offensively a judgment obtained by a different plaintiff in a prior suit against the same defendant as long as the defendant had a full and fair opportunity to contest the decision said to be controlling. See *Schwartz v. Public Admin. of Co. of Bronx,* 24 N.Y.2d 65, 298 N.Y.S.2d 955, 246 N.E.2d 725 (1969). See also *Zdanok v. Glidden Co.,* 327 F.2d 944, 956 (2 Cir.), *cert. denied,* 377 U.S. 934, 84 S.Ct. 1338, 12 L.Ed.2d 298 (1964).

A defendant's need for discovery in such a situation is manifest. As the New York Court of Appeals recognized in *Schwartz v. Public Admin. of Co. of Bronx, supra,* "[a] decision whether or not [parties] had a full and fair opportunity to establish their non-negligence in the prior action requires an exploration of the various elements which make up the realities of litigation." In listing those elements the Court included

"indications of a compromise verdict"—the very matter Lilly seeks to explore by way of discovery for purposes of this case.

Plaintiff argues, however, that various age-old policies firmly embedded in both State and federal law make jurors incompetent to impeach their own verdict[4] and thus the information sought would not only be inadmissible in evidence but also could not reasonably lead to the discovery of admissible evidence. This, she concludes, requires that the subpoenas be quashed since the scope of discovery under the federal rules must be limited to matter that is at least competent; otherwise it would result in abuses, as in this case, leading to encroachment on the sanctity of the jury system.

█ Here, as previously noted, Lilly does not seek to undercut the finality of the *Bichler* verdict as between the parties to that action; it merely draws into question the extent to which the *Bichler* judgment should be given preclusive effect in this action. In these circumstances, the rules and cases supporting the proposition that verdicts are unimpeachable by juror affidavits are not strictly applicable,[5] and the court must fashion a result that not only safeguards the institution of trial by jury but also insures that justice is done in this case.

█ Moreover, where as in this case plaintiff clearly intends to rely on "offensive" use of collateral estoppel, fundamental notions of fairness require that Lilly be afforded every reasonable opportunity to

3. In a diversity action, it is established that State law is controlling on the application of collateral estoppel in a given set of circumstances. *Lowell v. Twin Disc, Inc.,* 527 F.2d 767 (2 Cir. 1975); *Ritchie v. Landau,* 475 F.2d 151 (2 Cir. 1973). See *Ezagui v. Dow Chemical Corp.,* 598 F.2d 727, 732–33 (2 Cir. 1979).

4. See, *e. g., McDonald v. Pless,* 238 U.S. 264, 35 S.Ct. 783, 59 L.Ed. 1300 (1915); *Gamell v. Mt. Sinai Hospital,* 40 A.D.2d 1010, 339 N.Y.S.2d 31 (2nd Dept. 1972); *Schrader v. Joseph H. Gertner, Jr., Inc.,* 282 App.Div. 1064, 126 N.Y.S.2d 521 (2nd Dept. 1953); Rule 606(b), Federal Rules of Evidence.

5. Although the authority presented by defendant is not directly in point either, these cases do suggest there is no absolute prohibition or

rule against taking juror testimony that is violated by depositions aimed solely at cutting off the collateral estoppel effect of a judgment. See, *e. g., People v. DeLucia,* 20 N.Y.2d 275, 282 N.Y.S.2d 526, 229 N.E.2d 211 (1967); *Schrader v. Joseph H. Gertner, Jr., Inc., supra; People ex rel. Nunns v. County Court,* 188 App.Div. 424, 176 N.Y.S. 858 (2nd Dept. 1919). See also *Clark v. United States,* 289 U.S. 1, 53 S.Ct. 465, 77 L.Ed. 993 (1933); *Redman v. United States,* 77 F.2d 126 (9' Cir. 1935); *United States v. Freedland,* 111 F.Supp. 852 (D.N.D. 1953), which are in accord with the view that State law made applicable by Rule 601, Federal Rules of Evidence, supports the result reached here.

explore the factual basis for a claim that the judgment asserted as binding on it should not be accorded such an effect because based on a compromise verdict. See *Schwartz v. Public Admin. of Co. of Bronx, supra,* 24 N.Y. at 73, 298 N.Y.S.2d at 962, 246 N.E.2d at 730. This follows from the equitable nature of the doctrine of collateral estoppel. It is not applied inflexibly or as of a litigant's right; rather it is based on principles of fairness and was developed primarily as a means of protecting a party from legal harassment and redundant legal fees. *Divine v. C. I. R.,* 500 F.2d 1041, 1050 (2 Cir. 1974). See 1B Moore's Federal Practice ¶ 0.405[11] at 783–84 (2d ed. 1978).

■ In adopting such an approach, the court is aware of Professor Moore's further statement that "[a] judgment on a compromise verdict, like any other erroneous judgment, can be corrected in the trial court, or upon appeal. Collateral estoppel is by judgment, not by verdict; and a final judgment, though erroneous, is an adjudication entitled to collateral estoppel effect." 1B Moore's Federal Practice ¶ 0.443[4] at 3917 (2d ed. 1978) (footnotes omitted). No matter what may be the merit of this proposition in inter partes litigation, its blind application in a situation in which a stranger to the original litigation asserts a judgment *offensively* over a claim that the judgment was based on a compromise verdict violates basic notions of fairness.

Professor Moore, it is suggested, is in agreement on this point. He notes, while advancing arguments in support of the principle of mutuality of estoppel, that underlying the doctrine of judicial finality involved in res judicata and collateral estoppel are two broad policies: protection of private litigants against the harassing necessity of more than once litigating the same cause of action against the same adversary or his privy; and protection of the public interest in minimizing litigation. 1B Moore's Federal Practice ¶ 0.412[1] at 1809 (2d ed. 1978).

■ Surely, plaintiff here, who is a stranger to the *Bichler* action, cannot claim a need to be relieved of the burden of re-peated litigation, since she in fact seeks to be relieved of the burden of litigation altogether. Whether or not the public interest in minimizing litigation would be served by broad application of non-mutuality of estoppel, it is clear that while Lilly has had its day in court against Joyce Bichler in New York Supreme Court, strictly speaking it has not had an opportunity to meet plaintiff here who was a stranger to the State court action. Although this is not decisive in determining whether an estoppel should be applied, *B. R. DeWitt, Inc. v. Hall, supra,* 19 N.Y.2d at 145, 278 N.Y.S.2d at 599, 225 N.E.2d at 197, *citing Israel v. Wood Dolson Co.,* 1 N.Y.2d 116, 119, 151 N.Y.S.2d 1, 4, 134 N.E.2d 97, 99 (1956), it does suggest at a minimum that where the original judgment is questioned on the ground that it was based on a compromise verdict, a court must in fairness provide a litigant every opportunity to explore the basis for a defense to offensive use of the judgment as collateral estoppel against it. A request to limit the unfair effects of a judgment demonstrated not to be on the merits by direct evidence from the jurors themselves hardly seems unreasonable, and pre-trial discovery directed at this issue cannot be said to trench upon any of the policies directed at judicial finality. See 1B Moore's Federal Practice ¶ 0.412[1] at 1811–12 (2d ed. 1978).

■ Thus, where as here defendant raises a colorable argument that the *Bichler* verdict was not the result of a fair and just determination of the facts, technical nicety is exalted over substantial justice if defendant is precluded from pursuing discovery of information to make out such a defense, if any. Accordingly, the court holds that, where through permissible investigation apart from the compulsion of any court order a party demonstrates a factual basis for a belief that a judgment asserted against it as collateral estoppel was based on a compromise verdict, further inquiry into the facts by depositions of jurors shown to have information relevant to the issues is warranted under the Federal Rules of Civil Procedure. Plaintiff's motion to vacate the notices of deposition and quash the subpoenas is therefore denied.

SO ORDERED.