**OHIO–SEALY MATTRESS MANUFAC-
TURING COMPANY et al., Plaintiffs,**

v.

**Morris A. KAPLAN et al., Defendants.**

**No. 76 C 0810.**

United States District Court,
N. D. Illinois, E. D.

Aug. 1, 1980.

---

Frederick F. Brace, Jr. and William H. Tobin, Sidley & Austin, Chicago, Ill., for plaintiffs.

Howard Koven and Phil C. Neal, Friedman & Koven, Samuel Weisbard, McDermott, Will & Emery, John H. Matheson, Hedlund, Hunter & Lynch, Edward I. Rothschild, Rothschild, Barry & Myers, Max

Wildman, Wildman, Harrold, Allen & Dixon, Richard K. Wray, Arnstein, Gluck, Weitzenfeld & Minow, Henry S. Kaplan, Dressler, Goldsmith, Shore, Sutker & Milnamow, Eli E. Fink, Fink, Coff & Stern, Robert H. Joyce, Seyfarth, Shaw, Fairweather & Geraldson, Albert E. Jenner, Jr., Jenner & Block, Michael W. Coffield and Gregory A. Friedman, Coffield, Ungaretti, Harris & Slavin, Chicago, Ill., Fred B. Miller, Portland, Or., Louis B. Garippo, Thomas J. Campbell, Winston & Strawn, James E. Hastings, Chadwell, Kayser, Ruggles, McGee & Hastings, Stanley B. Block, Vedder, Price, Kaufman & Kammholz, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

This case comes before the Court for review of the Report and Recommendation issued by Magistrate Cooley on April 7, 1980, with respect to nine separate motions filed by the various parties.[1] Pursuant to 28 U.S.C. § 636(b)(1), the parties have filed comments on and objections to certain of the magistrate's findings and conclusions.

Upon examination of the magistrate's recommendation and independent consideration of the arguments posed by the parties, the Court adopts Magistrate Cooley's recommended denial of (1) Ohio's motion for summary judgment based on collateral estoppel; and (2) Sealy's motion to strike the Clayton Act allegation contained in Count VI of the Amended Complaint.[2] For the reasons stated herein, however, the Court must reject the magistrate's recommendation (1) that defendants' motion for summary judgment as to post-verdict damages stemming from pre-verdict acts be denied; (2) that Ohio's motion to sever Count VI of the complaint be granted; (3) that Michigan-Sealy's motion to file a cross-claim against Sealy be granted; and (4) that Ohio's motion to consolidate the 1976 and 1979 cases be granted.[3]

### I. Ohio's Motion For Summary Judgment Based On Collateral Estoppel

■ Although the Court is in agreement with the magistrate's recommendation that this motion be denied, the Court nonetheless deems it appropriate to clarify its view on this matter and to address certain prece-

1. Plaintiffs in this action, hereinafter referred to as "Ohio", are Ohio-Sealy Mattress Manufacturing Company and its wholly-owned subsidiaries: Sealy Mattress Company of Houston, Sealy Mattress Company of Puerto Rico, Inc., Sealy Mattress Company of Fort Worth, Sealy of the Northeast, and Sealy Mattress Company of Georgia. There are two groups of defendants involved in these motions: Sealy, Inc. and its subsidiaries (Sealy Spring Corporation, Sealy Mattress Company of Colorado, Inc., Sealy Mattress Company of Northern California, Inc., Sealy Mattress Company of Arizona, Inc., Sealy Mattress Company of Florida, Inc., Sealy Mattress Company of Pittsburg, Inc., and Sealy Mattress Company of Philadelphia, Inc.), hereinafter referred to as "Sealy"; and the former directors of Sealy and their respective licensees (Morris A. Kaplan, Sealy Mattress Company of Illinois, William H. Walzer, Sealy Connecticut, Inc., Sealy Greater New York, Inc., Waterbury Mattress Company, Morton H. Yulman, Sealy of Eastern New York, Inc., Sealy of Minnesota, Inc., Peter D. Brown, Sealy Mattress Company of Michigan, Inc., T. C. Englehardt, Jr., Fred G. Hodges, Bedding Company (a/k/a Sealy Mattress Company of Reading, Pa.), Sealy of Des Moines, Inc., Walter Hertz, Sealy Mattress Company of New Jersey, Inc., Joseph V. Moffitt, Sealy of the Carolinas, Peerless Mattress Company, Lloyd B. Rosenfeld, Sealy Mattress

Company of Oregon, Joseph R. Rudick, Maryland Bedding Company, James E. Thompson), hereinafter referred to as "director-defendants".

2. Defendants' motion to stay the proceedings in *Ohio-Sealy Mattress Manufacturing Co. v. Duncan*, 79 C 2741 (N.D.Ill.), pending the conclusion of this action and of proceedings in *Ohio-Sealy Mattress Manufacturing Co. v. Sealy, Inc.*, 71 C 1243 (N.D.Ill.), has been withdrawn, and thus need not be addressed further by this Court. And, since the parties have not objected to the Magistrate's recommendation that Ohio's motion to strike the defendants' summary judgment motion be denied, this Court will adopt that recommendation without comment. *See Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603, 605 (1st Cir. 1980).

3. The magistrate also recommended that Ohio's motion to sever Count V of the complaint be granted. The Court, however, will defer consideration of that recommendation until the parties have responded fully to the Magistrate's Report and Recommendation of June 9, 1980, which contains a recommendation on defendants' motion for summary judgment as to Count V.

dent not discussed by the magistrate. Contrary to the view expressed by the magistrate, the Court does not believe that *White v. Finkbeiner*, 570 F.2d 194, 201 (7th Cir. 1978), forecloses the possibility that an appellate court decision, by extrapolating from the trial court record, may provide the factual predicate necessary to accord a general jury verdict collateral estoppel effect. Rather, as the magistrate also concluded, the Court finds that the Seventh Circuit opinion in *Ohio-Sealy Mattress Manufacturing Co. v. Sealy, Inc.*, 585 F.3d 821 (7th Cir. 1978), *cert. denied*, 440 U.S. 930, 99 S.Ct. 1267, 59 L.Ed.2d 486 (1979) ("*Ohio-Sealy*"), simply did not provide such a predicate. With the exception of the findings that the jury "necessarily found that Sealy had allocated markets," *id.* at 827; and that "at least one of Sealy's first-refusal acquisitions ... violated the antitrust laws," *id.* at 844, the court declined to hold that any particular practice attacked by Ohio was found by the jury to violate the antitrust laws. *Id.* at 844. Thus, beyond the holding that the jury found the existence of an illegal market allocation scheme, the Seventh Circuit opinion cannot collaterally estop defendants from litigating the legality of the practices attacked in this action.

██ Nor can the jury foreman's notes and affidavit be used to embellish the general jury verdict. The Court agrees that to allow such inquiry into the deliberative process would be contrary to the policy considerations underlying Fed.R.Evid. 606(b).[4] The decision in *Katz v. Eli Lilly & Co.*, 84 F.R.D. 378, 380–382 (E.D.N.Y.1979), which permitted defendants to depose jury members for the purposes of determining the collateral estoppel effect to be accorded to a prior jury verdict, is factually distinguishable from this case in several important respects. First, the prior jury verdict in that case was rendered in New York state court, under whose law such examination of jurors apparently was permissible. 84 F.R.D. at 381 n.5. Second, the court found it appropriate to permit the defendants to inquire into the jury verdict in order to afford them an opportunity to meet the plaintiffs' attempt to use the jury verdict in an offensive application of collateral estoppel. *Id.* at 382. Here, on the other hand, it is the parties seeking to inquire into the jury's deliberations who are attempting to apply the collateral estoppel doctrine. Thus, on the facts, the Court does not believe that *Katz* provides compelling authority for Ohio's position. Moreover, to the extent that *Katz* might be considered applicable to this situation, the Court declines to follow that precedent. Thus, Ohio's motion for summary judgment based on collateral estoppel is denied.[5]

## II. *Defendants' Motion To Strike The Clayton Act Allegation Of Count VI*

██ The Court agrees with the magistrate's conclusion that the defendants have

---

4. This is particularly so in light of Ohio's failure to seek one of the more specific types of verdicts permitted by Fed.R.Civ.P. 49. Although such verdict forms are available not by right of the parties but rather at the discretion of the trial judge, *Sadowski v. Bombardier Ltd.*, 539 F.2d 615, 622 (7th Cir. 1976), a number of courts have recognized the desirability of using special verdict forms in complex litigation. *See e. g. Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263, 279 (2d Cir. 1979); *Jamison Co., Inc. v. Westvaco Corp.*, 526 F.2d 922, 935–936 (5th Cir. 1976); *Envirex, Inc. v. Ecological Recovery Associates, Inc.*, 454 F.Supp. 1329, 1339–1340 (M.D.Pa.1978), *aff'd*, 601 F.2d 574 (3d Cir. 1979). Indeed, as Judge Parsons himself has observed, his task in the equitable proceedings in the 1971 action would have been facilitated had there been explicit findings of fact made by the jury. *See* Transcript in Civil Action No. 71 C 1243 at 55 (November 5, 1979). In any event, because Ohio failed to

request such a verdict form, the Court cannot say whether Judge Parsons would have granted the request.

The Court emphasizes that the foregoing is not intended to suggest that Ohio is being "punished" for its failure to seek one of the alternative verdict forms permitted under Rule 49. Rather, the Court's discussion of Rule 49 only serves to underscore Ohio's failure to seek specific findings of fact by available means which do not conflict with the policies underlying Rule 606(b).

5. Ohio has requested that this Court certify for immediate appeal under 28 U.S.C. § 1292(b) the question of whether a juror's notes may be used to determine the collateral estoppel effect to be accorded a general jury verdict. First, the Court does not believe that there is "substantial ground for difference of opinion" on this issue, since *Katz* is distinguishable on its

not shown they will be prejudiced unduly by permitting Ohio to pursue its Clayton Act claim. There is no question but that Ohio should have made this allegation part of the pleadings at an earlier date. However, defendants do not contend that they did not know of Ohio's intention to pursue this theory of liability in the instant action. *See Middle Atlantic Utilities Co. v. S.M.W. Development Corp.,* 392 F.2d 380, 386 (2d Cir. 1968). Moreover, in light of the Court's ruling disposing of much of the amended complaint on the basis of res judicata and satisfaction of judgment, defendants' argument that the addition of the Clayton Act claim would further complicate an already unwieldy case carries little weight. Inasmuch as defendants have offered no other evidence of prejudice resulting from the addition of the Clayton Act claim, their motion to strike must be denied. *Seifert v. Solem,* 387 F.2d 925, 929 (7th Cir. 1967).

### III. *Defendants' Motion For Summary Judgment*

In this motion—the most significant of those addressed by the magistrate in his report and recommendation—the defend-

ants seek to preclude Ohio from recovering post-verdict damages resulting from pre-verdict acts alleged in Counts I–IV and VI of the Amended Complaint.[6] Sealy argues that Ohio could have sought all past and future damages arising from defendants' pre-verdict conduct in the trial of the 1971 case. Thus, Sealy contends that because there was a final judgment as to Ohio's damages from those acts, Ohio is barred by res judicata from now recovering any damages it failed to seek in the 1971 action.[7] The director-defendants seek summary judgment on the same ground, conceding for the purpose of the summary judgment motion the existence of privity with Sealy.[8] In addition, the director-defendants contend that Ohio is barred by the doctrine of satisfaction of judgment from seeking recovery.

The magistrate recommended that the defendants' motion be denied. In reaching this conclusion, the magistrate determined that res judicata—as well as satisfaction of judgment—would not be applicable to post-verdict damages for the reason that such damages are equitable in nature, and that there has been no final judgment in the 1971 case on the equitable relief sought by

---

facts. Moreover, given the Court's decision to grant defendants' motion for partial summary judgment, explained *infra,* it is unlikely that the factual matters Ohio seeks to estop relitigation of will have significant bearing in this case. Thus, it is unlikely that immediate appeal would "materially advance the ultimate termination of the litigation."

6. Ohio agrees that it is foreclosed by the judgment in the 1971 case from seeking any further pre-verdict damages that might have stemmed from pre-verdict conduct. Defendants, for their part, do not dispute Ohio's right to seek post-verdict damages stemming from any acts committed *subsequent to the verdict* in the 1971 case. Thus, the Court's references to "future" or "post-verdict" damages will include only those post-verdict damages that allegedly are the result of pre-verdict acts.

7. The principles, as well as the underlying policies, of res judicata are well-established. In order to protect litigants from the time and expense of multiple lawsuits, to conserve judicial resources, and to minimize the possibility of inconsistent opinions, the courts have applied res judicata to bar further claims by par-

ties or their privies based on a cause of action that has been terminated by a final judgment on the merits. *Montana v. United States,* 440 U.S. 147, 153–154, 99 S.Ct. 970, 973, 59 L.Ed.2d 210; *Cromwell v. County of Sac,* 94 U.S. 351, 352, 24 L.Ed. 195 (1877). Thus, the question presented by the res judicata motion—and indirectly by the satisfaction of judgment motion—is whether the future damages sought herein by Ohio are part of the same cause of action terminated by the final judgment in the 1971 case.

8. The director-defendants, unlike Sealy, do not admit that Ohio did not seek future damages in the trial of the 1971 action. In light of the Court's disposition of their motion, however, it is unnecessary at this time to determine if in fact the jury award did include the future damages sought by Ohio in this action. *See Cromwell,* 4 Otto at 352, 94 U.S. at 352, 24 L.Ed. 195 (res judicata bars litigation of all claims that could have been raised, as well as those that were raised, in a prior proceeding on the same cause of action).

Ohio. Neither Ohio nor the defendants, however, agree with this characterization of Ohio's request for post-verdict damages. Nor does this Court. It is clear that the future damages sought by Ohio in this action represent legal relief in the same sense as those damages which Ohio sought at the trial of the 1971 case. The legal nature of the future damage relief is further highlighted by Ohio's request for treble damages, which is unavailable under the equitable provisions of 15 U.S.C. § 26. This legal relief is separate and distinct from any incidental damages that Ohio might seek in an equitable proceeding, as is evident from the fact that Ohio presently is seeking monetary relief as an incident of the equitable relief it hopes to receive in the proceeding under advisement before Judge Parsons. The Court, therefore, considers the post-verdict damages that Ohio is seeking herein to be legal relief for alleged harm from acts which were litigated and finally decided in the 1971 action.[9]

■ Viewed thusly, Ohio's claim for post-verdict damages against Sealy would appear to be foreclosed by res judicata, since the right to future relief generally merges with the past damage relief obtained in the judgment. Ohio, however, posits three arguments in an attempt to avoid this result. For the reasons that follow, this Court finds each equally unpersuasive.

■ Initially, Ohio asserts that because it had the "election" of pursuing future equitable relief or future legal relief in the 1971 action, it necessarily had the "election" to seek future equitable relief in that action and reserve the right to pursue future legal relief in a separate proceeding. Ohio's argument, however, fails to explain why its "election" should supersede the principles of res judicata that normally are applicable in situations such as this. Broadly speaking, a party always has the option—or election— of raising fewer than all the potential theories of relief that might be available. However, it is the rule that when a party can present all grounds in support of his cause of action, he must do so, if at all, in the proceeding on that cause of action. *Lambert v. Conrad*, 536 F.2d 1183, 1185 (7th Cir. 1976). Once a final judgment is entered on that cause of action, res judicata prohibits relitigation of all issues raised therein as well as "all relevant issues which could have been but were not raised and litigated in the suit." *In re Interstate Stores, Inc.*, 558 F.2d 1046, 1047 (2d Cir. 1977); *see also Cromwell*, 94 U.S. at 352; *F. L. Mendez & Co. v. General Motors Corporation*, 161 F.2d 695, 699 (7th Cir. 1947). Thus, Ohio's talismanic invocation of the word "election" does not answer the question of whether its failure to seek future damages in the trial of the 1971 action precludes it from pursuing those damages in this action. Rather, the answer to that question turns upon whether the post-verdict damages Ohio now seeks were a part of the cause of action terminated by a final judgment in the 1971 action.[10]

9. Even were this Court in agreement with the magistrate's characterization of future damages as equitable, it nonetheless would dismiss Ohio's claim for these damages as a result of the equitable proceeding pending before Judge Parsons. *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 817, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976); *United Steelworkers v. Hamilton Steel Products, Inc.*, 404 F.2d 878, 879 (7th Cir. 1968), *cert. denied*, 394 U.S. 1000, 89 S.Ct. 1595, 22 L.Ed.2d 778 (1969); ("We think it was within the discretion of the district court to refuse to entertain the Union's Section 301 suit at this late date, for the issues can be properly disposed of in the interpleader and bankruptcy proceedings"); *United States v. American Radiator & Standard Sanitary Corp.*, 388 F.2d 201, 203–204 (3d Cir.

1967), *cert. denied*, 390 U.S. 922, 88 S.Ct. 857, 19 L.Ed.2d 983 (1968) ("[C]ertainly, if the ... relief sought in the sister court has been requested by the aggrieved parties ... the sister court should hold its hand."). *See also* 1B Moore's Federal Practice ¶ 0.410[2] at 1164–1165 ("[I]f separate suits are instituted and pending for various parts of a single cause of action, the pendency of the first may be pleaded in abatement of the others.").

10. Ohio's "election" theory is not salvaged by citation to *Roberts v. Sears, Roebuck and Company*, 617 F.2d 460 (7th Cir. 1980). In that case, plaintiff had filed suit seeking restitution or damages for defendant's fraudulent conduct in obtaining assignment of a valuable patent. Subsequent to a jury award of $1 million, the trial judge denied plaintiff the remedy of resti-

Ohio argues that since post-verdict damages were speculative at the time of trial in 1971 action, those damages constitute a separate cause of action under the reasoning in *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 338–339, 91 S.Ct. 795, 806, 28 L.Ed.2d 77 (1971). In that case, which involved a question concerning the four-year statute of limitations applicable to antitrust actions, the Supreme Court observed that a cause of action accrues "when a defendant commits an act that injures a plaintiff's business," and that each cause of action that accrues entitles a plaintiff to recover past as well as future damages he predictably will suffer. In order to recover such damages, however, the Supreme Court held that suit must be filed within four years of the complained of acts unless "the fact of their accrual is speculative or their amount and nature unprovable," for the reason that the speculative nature of the damages makes it impossible to say that a cause of action has accrued.

Ohio seeks to apply this reasoning to the instant case. Ohio alleges that it could not

have known that it would suffer post-verdict damages from the acquisitions, since it had no way of knowing whether the defendants would retain possession of the acquired corporations after the jury verdict. In addition, Ohio argues that the amount of future damages it would suffer in the event of defendants' continued retention of the acquired corporations was unprovable.

Assuming the applicability of the *Zenith* doctrine to issues of res judicata,[11] the Court is unpersuaded that Ohio's damages were speculative in either of the senses contemplated by *Zenith*. Ohio's position as to the fact of post-verdict damage is simply specious. Distilled to its essence, Ohio's position is that because there has been a delay in the equitable relief sought—which relief conceivably might include divestiture of the disputed acquisitions and their resale to Ohio—and because the defendants voluntarily could have given or sold the acquisitions to Ohio, the possibility of future damages was so speculative as to preclude presentation to the jury. The latter argument

tution on the ground that the jury verdict constituted an election of remedies. Plaintiff appealed this ruling, and defendant cross-appealed on the ground that it had been denied the opportunity to challenge the validity of the underlying patent. In *Roberts v. Sears, Roebuck & Co.*, 573 F.2d 976, 980–982 (7th Cir. 1978), *cert. denied*, 439 U.S. 860 (1978), the Seventh Circuit found that Sears was not entitled to raise patent defenses to plaintiff's fraud action. The court also found that while traditional election of remedies doctrine might preclude the desired equitable relief, it would not be a bar to return of the patent based on rescission. On remand, however, the trial judge not only granted return of the patent, but also ordered an accounting of defendant's profits reaching back to the date of assignment. In the second appeal, the Seventh Circuit found that the only further remedy plaintiff could receive in the fraud action was restoration of the patent as of January 20, 1977, the date of final judgment on the jury verdict. The court emphasized, however, that plaintiff could sue for any alleged patent infringement occurring after that date, and that defendant could defend in such an action on the basis of patent invalidity. 617 F.2d at 465.

Ohio suggests that *Roberts* sanctions the procedure it has adopted, whereby it sought past damages up to the point of trial in the 1971 action and now seeks post-verdict damages in a separate proceeding. As is evident from the

foregoing, however, any future damages the plaintiff in *Roberts* might seek stem not from the fraud cause of action that terminated in the final judgment of January 20, 1977, but rather from a distinct cause of action arising from patent infringement subsequent to that date. Thus, since Ohio has not persuaded the Court that the future damages sought herein constitute a separate cause of action from the 1971 case, *Roberts* provides no authority for its position.

11. What little authority there is on this question is split. *Compare Neeld v. National Hockey League*, 439 F.Supp. 446, 452 (W.D.N.Y. 1977) *with Poster Exchange, Inc. v. National Screen Service Corp.*, 456 F.2d 662, 667 (5th Cir. 1972); *International Telephone & Telegraph Corp. v. General Telephone & Electronics Corp.*, 369 F.Supp. 316, 326 (M.D.N.C.1973), *rev'd on other grounds*, 527 F.2d 1162 (4th Cir. 1975). The Court believes that the policies underlying the *Zenith* speculativeness exception to accrual of causes of action in statute of limitations cases applies equally to issues of res judicata. However, in light of the Court's conclusion that Ohio's damages were not speculative at the time of trial in the 1971 case, it need not decide this issue, but rather may assume the applicability of this doctrine to the instant case.

flies in the face of reason, as it assumes that a party which has litigated to keep certain acquisitions suddenly would do an about-face and "give up" those same acquisitions. Moreover, to the extent that the prospect of the equitable hearing created some uncertainty as to the existence of future damages, that uncertainty was the result of Ohio's initial election to seek post-verdict equitable rather than legal relief. Certainly the Supreme Court in *Zenith* did not contemplate that a plaintiff by its own actions could create speculativeness, and then use that uncertainty as to future damages to avoid the policies underlying res judicata.

Ohio fares no better in its argument as to the unprovable nature of the post-verdict damages. As this Court has observed,

> ... there is broad latitude in establishing damages in private antitrust actions.... While the amount of damages may not be calculated solely on the basis of mere speculation or guesswork, neither is it required that the damages be based on mathematical certainties. Rather, the finder of fact 'may make à just and reasonable estimate of the damage based on the relevant data presented at trial and render its decision accordingly.' *Bailey v. Meister Brau, Inc.*, 535 F.2d 982, 991 (7th Cir. 1976).

*Ohio-Sealy Mattress Manufacturing Co. v. Duncan*, 486 F.Supp. 1047, 1053 (N.D.Ill. 1980) ("Duncan"). Defendants have suggested two methods for calculating loss of future profits, both of which have been approved by various courts: projecting future profits on the basis of past profit performance, and discounting that figure to present value, *Shor-Line Rambler, Inc. v. American Motor Sales*, 543 F.2d 601, 605 (7th Cir. 1976), *Greene v. General Foods Corp.*, 517 F.2d 635, 663–666 (5th Cir.), *cert. denied*, 424 U.S. 942, 96 S.Ct. 1409, 47 L.Ed.2d 348 (1976); and determining the fair market value of a business. *See e. g. Landon v. Twentieth Century-Fox Film Corp.*, 384 F.Supp. 450, 458 (S.D.N.Y.1974). Although Ohio has argued that the fair market value approach is inaccurate in that it would fail to give it the benefit of its

bargain, it has been silent as to the alternative approach suggested by defendants. And, indeed, the Court believes that the technique of projecting lost future profits could have been used by Ohio in the trial of the 1971 action. In a similar situation, the court in *Greene* approved the use of expert testimony which calculated future profits on the basis of "trends established in the years preceding the termination, giving more emphasis ... to the more recent years." 517 F.2d at 664. The court explained that such an estimate was likely to be fairly accurate since the plaintiff had been in business for 19 years and thus had an ample data base from which to work. *Id..* As this Court has observed, Ohio in the first trial adduced considerable evidence as to its lost past profits, using the technique of applying "a representative Ohio plant profit margin to the sales actually made by Sealy after acquisition." *Duncan*, 486 F.Supp. at 1053. Moreover, as in *Greene*, there was a wealth of comparative information from which Ohio could have drawn projections of future profits. Thus, the Court finds that this past profit data could have been used by Ohio in the 1971 case to make a reasonable estimate of future damages.

Ohio misconceives the meaning of *Zenith* when it asserts that the decision held this method of calculating future damages to be impermissible. *Zenith* did not alter the well-established body of law governing the question of speculativeness. Rather, it simply applied that body of law to statute of limitations questions. Indeed, this is borne out by the use of this method of calculation in *Shor-Line Rambler* and *Greene*, both decided after *Zenith*. Thus, the *Zenith* Court's rejection of the proposed method of calculating future profits therein turned upon the facts of that case. For that reason, *Zenith* is of aid to Ohio's position only if the facts of the 1971 action are sufficiently similar to those presented in *Zenith*. In *Zenith*, however, the plaintiff was seeking damages for its exclusion from entry into a particular market. To prove future damages, plaintiff not only would have had to

show what its ultimate market share would have been, but also how long it would have taken it to achieve that market share and the lingering effects it would have suffered. In the 1971 case, however, Ohio had sought to enter a market by purchasing going concerns rather than by starting new enterprises. For this reason, the ultimate market share that Ohio would have had was known, as was the time it would have obtained that share absent the allegedly illegal acquisitions. Unlike *Zenith*, the Court does not believe that Ohio's future damage claims would have gotten "short shrift" had they been pursued in the 1971 case. *See Zenith*, 401 U.S. at 342, 91 S.Ct. at 808. Thus, the Court concludes that Ohio's post-verdict damages at the time of trial in the 1971 case were not speculative within the meaning of *Zenith*.[12]

Finally, Ohio claims that the post-verdict damages sought herein were not part of the 1971 cause of action because they resulted from post-verdict "nonactions" by defendants. In *Lawlor v. National Screen Service Corp.*, 349 U.S. 322, 75 S.Ct. 865, 99 L.Ed. 1122 (1955), the Supreme Court recognized that a prior judgment did not bar a subsequent action involving essentially the same course of conduct, since "[s]uch a course of conduct—for example, an abatable nuisance—may frequently give rise to more than a single cause of action." *Id.* at 327–328, 75 S.Ct. at 868. In *Lawlor*, however, the subsequent action did not arise merely out of defendant's failure to abate an abatable nuisance, but rather from overt acts occurring subsequent to the prior judgment.

*Id.* at 328, 75 S.Ct. at 868. That subsequent causes of action may arise only from acts, rather than the continued consequences of adjudicated past behavior, also is implicit in *Zenith*, which observed that antitrust causes of action accrue each time "a defendant *commits an act that injures* a plaintiff's business." 401 U.S. at 338, 91 S.Ct. at 806 (emphasis supplied).

And indeed, the weight of the authority requires post-verdict actions by a defendant, rather than adverse consequences stemming from inaction, in order to establish a cause of action. For example, in *Poster Exchange, Inc. v. National Screen Service Corp.*, 517 F.2d 117 (5th Cir. 1975), the court distinguished between continuing conduct by a defendant that caused damage and the "continuing damages it [plaintiff] feels from a single day's monopoly and refusal to deal . . ." *Id.* at 125. In the latter instance, the "actionable wrong is by its nature permanent at initiation without further acts." *Id.* at 126. Thus, once that wrong is litigated, a plaintiff is not entitled to maintain a subsequent action to remedy the "abatable but unabated inertial consequences" of that actionable wrong. *Id.* at 128. In the former situation, however, a subsequent action may be maintained, since the post-verdict action and damage give rise to a cause of action distinct from the one litigated earlier. *See also In re Multidistrict Vehicle Air Pollution*, 591 F.2d 68, 71–72 (9th Cir. 1979); *Imperial Point Colonnades Condominium v. Mangurian*, 549 F.2d

---

12. The Court observes that the magistrate reached the same conclusion. He found, however, that future damages were speculative in the sense that Ohio's future damages were infinite in amount, whereas the defendants' capacity to respond in damages was finite. To the extent this kind of "speculativeness" ever may be said to exist, it is not of the type contemplated by *Zenith*. Nor can the rules of res judicata be relaxed, as the magistrate implicitly suggested, because Ohio might have feared that the jury simply would not return a damage award of the magnitude that would have resulted from the inclusion of future damages. Indeed, even as a factual matter, this view of the jury process is of questionable validity, particularly in light of the recent damage award returned by

the jury in *MCI Communications Corp. v. American Telephone & Telegraph Co.*, 74 C 0633 (N.D.Ill.).

The Court also rejects Ohio's argument that summary judgment is precluded on this issue by virtue of the existence of disputed facts as to the speculativeness of future damages at the time of trial in the 1971 case. Inasmuch as the Court has the benefit of the record and theories in that action, an evidentiary hearing would not be of further assistance to the Court in deciding whether future damages were speculative. Indeed, in an analogous situation, the Supreme Court in *Zenith* decided the speculativeness issue itself rather than remand the case for a hearing and determination by the trial judge. 401 U.S. at 340, 91 S.Ct. at 807.

1029, 1035 (5th Cir. 1977).[13] The Court considers defendants' acquisitions of the businesses in question, to the extent they were illegal, to be of the type of acts that are by their "nature permanent at initiation." Any damage suffered by Ohio was complete at the time of acquisition and, as the Court has held, capable of proof. Unlike the situation where there are continued refusals to deal, the acts causing the damage—the acquisitions—have not been repeated.[14] Thus, the Court must reject Ohio's argument that defendants' refusal to divest themselves of the acquired businesses and thereby abate the "inertial consequences" of those acquisitions constitutes a new cause of action.[15]

Thus, for the foregoing reasons, it is clear that Ohio's effort to seek post-verdict damages from Sealy is barred by res judicata. Whether the same doctrine bars Ohio from seeking those damages from the director-defendants is more problemmatic. The director-defendants were not parties to the 1971 action; and, in their answer to the complaint, they deny the existence of privity with Sealy. Without privity, of course, the director-defendants cannot invoke the doctrine of res judicata.

■ This point need not detain the Court, however, inasmuch as the principle of satisfaction of judgment provides an independent basis for the director-defendants' motion.[16] Irrespective of privity, that doctrine provides that "where a plaintiff has obtained a judgment against one tortfeasor and that judgment has been satisfied, the plaintiff is barred from seeking recovery from another joint tortfeasor." *Hartsfield v. Seafarers International Union*, 427 F.Supp. 264, 267 (S.D.Ala.1977); *see also Sessions v. Johnson*, 5 Otto 347, 95 U.S. 347, 24 L.Ed. 596 (1877). Moreover, this rule obtains, regardless of whether plaintiff sought or received all damages that allegedly resulted from the wrong litigated in the earlier proceeding. *Hartsfield*, 427 F.Supp. at 268. As the court in *Hartsfield* observed, the

**13.** Although these cases deal with statute of limitations issues, the Court believes the principles enunciated therein are applicable in this context as well. Ohio argues that *Exhibitors Poster Exchange, Inc. v. National Screen Service Corp.*, 421 F.2d 1313, 1318 (5th Cir. 1970), a case involving res judicata, applies a more lenient rule in determining new causes of action. Therein, the court held that significant actions or *nonactions* occurring subsequent to the filing of a related lawsuit may give rise to new causes of action for damages. However, in a subsequent appeal in that action, the court clarified its earlier opinion by stating that "we concluded that they [the pleadings] could be read to allege new claims based on *significant post-1961 actions* ..." *Exhibitors Poster Exchange, Inc. v. National Screen Service Corp.*, 517 F.2d 110, 113 (5th Cir. 1975) (emphasis supplied).

**14.** For this reason, the recent decision in *Borger v. Yamaha International Corp.*, 625 F.2d 390, 398 (2d Cir. 1980), is inapposite. There, the court found that future profits were too speculative to be considered by a jury in a refusal to deal case, since "it would be pure speculation for the jury to determine that Yamaha's refusal to grant Borger's a franchise was forever irrevocable...." *Id.* at 75,898.

**15.** Nor is there merit in Ohio's contention that defendants' alleged post-verdict conduct—such as requiring passover and warranty payments—permit it to seek future damages stemming from the pre-act acquisitions. It is clear that Ohio may sue only for those damages which occur as a result of some post-verdict act. The mere allegation that the post-verdict acts were but a continuation of the pre-verdict conspiracy is insufficient to entitle Ohio to damages in addition to those which it has received to remedy defendants' pre-verdict conduct. *Baker v. F & F Investment*, 420 F.2d 1191, 1200 (7th Cir.), *cert. denied, Universal Builder's, Inc. v. Clark*, 400 U.S. 821, 91 S.Ct. 40, 27 L.Ed.2d 29 (1970).

**16.** The director-defendants have argued that they may admit privity only for the purposes of this motion, while reserving the question as to the other aspects of the case. It is true that if these defendants would fail in their motion, any admissions made for the purposes of the motion would not be binding. Conversely, if defendants prevail on a motion based in part on an admission made therein, that admission is binding on them for the other issues in the case. *Stahly, Inc. v. M. H. Jacobs*, 183 F.2d 914, 919 (7th Cir.), *cert. denied*, 340 U.S. 896, 71 S.Ct. 239, 95 L.Ed. 650 (1950). At any rate, the director-defendants stated that they would concede the privity issue if the Court ruled against them on the satisfaction of judgment motion, and held that they would not admit privity solely for the purpose of the motion. Thus, res judicata provides an alternate basis for granting director-defendants' motion for partial summary judgment.

underlying rationale of satisfaction of judgment is twofold. First, it seeks to prevent plaintiffs from receiving unjust enrichment by filing seriatim actions against individual tortfeasors and obtaining windfall recovery. Second, the doctrine is court-protective in that it prevents the drain on judicial time and resources that otherwise would result from such repeated litigation. *Id.* at 267.

■ There is no question but that Ohio has received full payment of the $10.2 million judgment it obtained in the 1971 action, as well as an additional $2.8 million in interest. The fact that there has not as yet been an attorneys' fee award made does not render the judgment unsatisfied. *See* Rule 32(b), General Rules for the Northern District of Illinois ("The clerk shall enter the satisfaction of a judgment upon payment to the court of the amount of the judgment plus interest and costs"); *cf. Swanson v. American Consumer Industries, Inc.,* 517 F.2d 555, 561 (7th Cir. 1975) (attorneys' fee awards held to be incidental to the main litigation.) [17] Nor does the fact that Ohio accepted a remittitur, thereby halving its recovery, obviate the satisfaction of judgment. Whether or not the trial judge in the 1971 action erred in ordering a remittitur is irrelevant. As the Seventh Circuit recognized, Ohio, by accepting the remittitur rather than opting for a new trial and the opportunity to appeal therefrom, waived the right to challenge the adequacy of the remitted judgment. *Ohio-Sealy,* 585 F.2d at 840. By seeking additional recovery from the director-defendants, Ohio is attempting to attack indirectly that which it has waived the right to attack directly. This the Court will not permit Ohio to do.

Accordingly, the Court grants Sealy's motion for partial summary judgment on Counts I–IV and VI of the amended complaint, and the director-defendants' motion for partial summary judgment as to Counts I–IV. The effect of this ruling is that Ohio may not seek post-verdict damages for any acts that occurred prior to the verdict in the 1971 action.

### IV. *Ohio's Motion To Sever Count VI*

The magistrate recommended that this motion be granted, largely for the reason that the allegations and theories contained in Count VI were considerably different from those contained in the remainder of the complaint, and that severance would make for an easier and less confusing trial. Sealy did not oppose this motion, either in the proceedings before the magistrate or in the briefs filed with this Court. However, the Court observes that the need for severance is greatly diminished in light of the ruling today disposing of many of the allegations in Counts I and VI, as well as Counts II–IV in their entirety. Thus, severance of Count VI would appear to be unnecessary in view of the present posture of the case. Accordingly, the motion to sever Count VI will be denied without prejudice to a future motion by Sealy or Ohio should severance become appropriate.

### V. *Michigan-Sealy's Motion To File A Cross-Claim Against Sealy, Inc.*

The magistrate recommended that this motion be granted, inasmuch as there would be no prejudice to defendants and it would be in the interest of judicial economy to have the cross-claim tried in the same case with Counts I and III of the Amended Complaint, whose theories it closely tracks. Once again, however, this conclusion must be reassessed in light of the Court's decision granting defendants' summary judgment on the acquisition claims set forth in these counts. In the present posture of the case, the cross-claim that Michigan-Sealy seeks to file would not promote judicial economy, but rather would complicate the trial of the 1976 case. Moreover, denial of Michigan-Sealy's motion to file a cross-claim would not prejudice that party's right to proceed in a separate action on the theories contained therein. Accordingly, Michigan-Sealy's motion to file a cross-claim is denied.

---

17. This is not to suggest—nor do the director-defendants so argue—that satisfaction of judgment bars Ohio from seeking an attorneys' fee award at the close of the equitable proceeding in the 1971 case. Rather, the Court merely finds that the absence of an attorneys' fee award to date does not bar application of the satisfaction of judgment doctrine to prohibit Ohio from seeking additional damages for pre-verdict conduct.

## VI. *Ohio's Motion To Consolidate The 1976 And 1979 Cases*

By this motion, Ohio seeks to consolidate Counts I–IV of the 1976 case with certain elements of the 1979 case. The magistrate recommended that this motion be granted, with the qualification that the cases should be severed if the 1976 case would be ready for trial before the 1979 case. However, inasmuch as Counts I–IV of the Amended Complaint substantially have been disposed of by today's opinion, consolidation now would be inappropriate.[18] Accordingly, the motion to consolidate is denied.[19] It is so ordered.

**18.** In light of this decision, the Court also will deny Ohio's motion under Fed.R.Civ.P. 15 to amend the pleadings in the 1976 and 1979 actions by filing one consolidated complaint.

**19.** In denying this motion, the Court nonetheless expects counsel in the 1976 and 1979 actions to follow through on their stated intention to cooperate on the discovery in the two actions, in order to satisfy the previously stated desire of all parties that both cases be brought to trial as expeditiously as possible.