**OHIO–SEALY MATTRESS MANUFACTURING COMPANY et al., Plaintiffs,**

v.

**Morris A. KAPLAN et al., Defendants.**

**No. 76 C 0810.**

United States District Court, N. D. Illinois, E. D.

Feb. 27, 1981.

Frederick F. Brace, Jr., William H. Tobin, Sidley & Austin, Chicago, Ill., for plaintiffs.

Howard Koven, Phil C. Neal, Friedman & Koven, Samuel Weisbard, McDermott, Will & Emery, John H. Matheson, Hedlund, Hunter & Lynch, Edward I. Rothschild, Rothschild, Barry & Myers, Max Wildman, Wildman, Harrold, Allen & Dixon, Richard K. Wray, Arnstein, Gluck, Weitzenfeld & Minow, Henry S. Kaplan, Dressler, Goldsmith, Shore, Sutker & Milnamow, Eli E. Fink, Fink, Coff & Stern, Robert H. Joyce, Seyfarth, Shaw, Fairweather & Geraldson, Albert E. Jenner, Jr., Jenner & Block, Chicago, Ill., Fred B. Miller, Portland, Or., Michael W. Coffield, Gregory A. Friedman, Coffield, Ungaretti, Harris & Slavin, Louis B. Garippo, Thomas J. Campbell, Winston & Strawn, James E. Hastings, Chadwell, Kayser, Ruggles, McGee & Hastings, Stanley B. Block, Vedder, Price, Kaufman & Kammholz, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge.

This case comes before the Court on cross-motions by the parties pursuant to Fed.R.Civ.P. 15. At issue are (1) whether the complaint and counterclaim in this action should be permitted to reach conduct occurring and damages accruing subsequent to April 24, 1978, and (2) whether at this point in the litigation plaintiffs may assert additional damage claims.

### I. *Temporal Scope of the Litigation*

In their original complaint, filed March 3, 1976, plaintiffs sought to recover damages through the date of trial of this action from the named corporate entities and members of the board of directors. On April 24, 1978, the corporate defendants installed a new board of directors; on July 2, 1979, plaintiffs filed a separate action against the corporate defendants and the new directors, seeking damages from April 24, 1978, through the date of trial of that action. *Ohio-Sealy Mattress Manufacturing Co. v. Duncan,* 79 C 2741 (N.D.Ill.). Defendants in *Duncan* moved to abate that action as duplicative of the *Kaplan* litigation on the ground that both suits sought post-April 24, 1978, damages for essentially the same conduct. Prior to a ruling on the motion, however, plaintiffs filed an amended complaint in *Kaplan* in which they limited the time period for which they would seek damages to April 14, 1978. Amended

Complaint, ¶¶ 95(b), 189(a) (October 2, 1979).

By their Motion for Leave to File Second Supplemental and Amended Complaint, plaintiffs now seek to reverse their decision to limit the temporal scope of this action. They do so, however, without providing the Court with an explanation for this sudden shift [1] or its effect on the *Duncan* litigation. Nor do plaintiffs deny that by extending the time frame of this action the Court would further complicate this already complex and protracted litigation; to the contrary, they concede that this would be the result. *Ohio-Sealy's Memorandum in Response to Memorandum of Sealy, Incorporated Re Filing Supplemental Counterclaim* at 4 (February 10, 1981). Rather, they rely primarily on the "liberal amendment" policy embodied in Rule 15.[2] The Court is cognizant that Rule 15 counsels liberality in permitting amendments and supplemental pleadings, in order to promote both fairness as between the parties in litigation and judicial economy in resolving disputes. 3 Moore's Federal Practice ¶ 15.02[1] at 14. In this case, however, the Court is convinced that expanding the temporal scope of this litigation would serve neither purpose.

Rule 15 promotes fairness between the parties by ensuring that an unwary litigant is not trapped by the limitations of his pleadings. What plaintiffs here seek to reverse, however, is not an unwitting omission in the pleadings but a conscious decision which has shaped the conduct of this litigation for the past seventeen months. Discovery has proceeded on the assumption that the scope of this action does not extend beyond April 24, 1978. This Court, based in part on that same assumption, has issued rulings narrowing the scope of this litigation. Yet plaintiffs have waited until now, a time when this case is well on the road to ultimate disposition, to attempt to revive an issue that could long forestall that resolution. As this Court recently observed in *Conroy Datsun, Ltd. v. Nissan Motors Corp.,* 506 F.Supp. 1051, at 1054, 1980 Trade Cases, ¶ 63,740 at '77,934 (N.D.Ill.1980), "[m]otions to amend pleadings so as to restore allegations that the movant previously abandoned create a difficult burden for the moving party, since it is obvious that the movant did not suddenly discover a new cause of action." There, the Court denied plaintiffs' motion to reinstate a claim they earlier had dropped and had resurrected ten days prior to the close of discovery, finding that defendant "has been unduly prejudiced by plaintiffs' inconsistent handling" of the claim. *Id.* See also *Waters v. Weyerhauser Mortgage Co.,* 582 F.2d 503, 507 (9th Cir. 1978) ("To permit the amendment would allow the plaintiffs to litigate an issue they had earlier conceded, to the prejudice of the rights of the defendants"). Thus, the Court concludes that the interest of fairness does not require an expansion of the temporal scope of this action.[3]

---

1. Plaintiffs in their motion suggest that they limited the scope of the *Kaplan* litigation on the assumption that the suit would go to trial in 1980. Plaintiffs, however, have not explained why the inability to bring *Kaplan* to trial in 1980 requires an expansion of that case which would delay, rather than expedite, its resolution.

2. Plaintiffs have characterized their motion as one to supplement the pleadings by including subsequent developments. *See* Rule 15(d). By expanding the time frame set forth in the Amended Complaint, however, plaintiffs are not merely "setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented." Although the Amended Complaint was filed in October, 1979, they seek to expand that pleading to include actions and damages occurring since April, 1978. Plaintiffs' motion seeks to fundamentally alter the pleading, and thus must be considered pursuant to Rule 15(a). In considering a motion pursuant to Rule 15(a), the Court possesses the discretion to deny leave to amend where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, futility of amendment, etc." *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962); *Mertens v. Hummel,* 587 F.2d 862, 865 (7th Cir. 1978).

3. In *Lewis v. Marine Midland Grace Trust Co. of New York,* 68 F.R.D. 39 (S.D.N.Y.1973), the court did permit plaintiffs to revive a claim

Nor, in the Court's judgment, does judicial economy provide a compelling basis for expanding the temporal scope of this litigation. Plaintiffs contend that expansion of the time frame in *Kaplan* would avoid the necessity of two trials where one would suffice. Thus, it appears that by this motion plaintiffs seek to secure indirectly what the Court has refused to grant them directly: consolidation of the *Kaplan* and *Duncan* cases. *See Ohio-Sealy Mattress Manufacturing Co. v. Kaplan,* 90 F.R.D. 11 at 21 and n.18 (N.D.Ill., August 1, 1980). Now, as then, the Court believes that consolidation of the actions is unwarranted.

Thus, for these reasons the Court denies plaintiffs' motion to extend the time period for which relief may be sought in *Kaplan* beyond April 24, 1978.[4] The Court notes that to the extent the allegations in *Duncan* merely are continuations of the allegations in *Kaplan,* albeit under a new board of directors,[5] this ruling will not deny plaintiffs the right to seek post-April 24, 1978 relief. *See PSG Co. v. Merrill Lynch, Pierce, Fenner and Smith, Inc.,* 417 F.2d 659, 664 (9th Cir. 1969).

## II. *Additional Damage Claims*

Plaintiffs also seek to amend their complaint to include several elements of damage not asserted in their current pleading: (1) lost profits stemming from their inability to operate Sealy plants, competitor plants, or "no-name" plants outside of plaintiffs' areas of primary responsibility; (2) royalty payments made by plaintiffs and allegedly used by defendants to finance anti-competitive activities; and (3) attorneys' fees plaintiffs expended in defending against an allegedly frivolous counterclaim in *Ohio-Sealy Mattress Manufacturing Co. v. Sealy, Inc.,* 71 C 1243 (N.D.Ill.).[6] At the outset, the Court observes that defendants assert that these latter two damage claims were included in the original complaint in this action, but omitted from the amended complaint filed in 1979. Once again, plaintiffs have failed to provide this Court with a satisfactory explanation for their attempt to revive these claims. Under the reasoning of *Conroy Datsun,* the Court denies plaintiffs' motion to add claims for royalty payments and for attorneys' fees incurred in litigating the counterclaim in the 1971

they earlier had dismissed voluntarily. That case is distinguishable, however, in that while the court concluded that there were good and sufficient reasons for denying the motion, it was persuaded that the amendment should be allowed because discovery still was at a threshold stage, there would be no new or novel factual issues injected into the case, and there was no undue prejudice to defendants. *Id.* at 50–51. Here, on the other hand, the Court specifically has found that discovery is at an advanced stage, that expansion of the temporal scope of the litigation would inject new factual issues, and that defendants would be unduly prejudiced.

4. Defendants in their counterclaim seek damages for unpaid royalties and late charges through the date of trial. They have stated in their briefs, however, a willingness to amend their counterclaim to seek damages only up to April 24, 1978, the time frame of the Amended Complaint. Accordingly, the Court, without expressing a view as to whether defendants could be compelled to do so, will order defendants to file within twenty days an amended counterclaim cutting off the period for recovery of damages at April 24, 1978.

5. Count I of the Complaint in *Duncan* encompasses the allegations in Counts I and VI of the

Amended Complaint in *Kaplan,* with the additional statement that "[t]he new board members have permitted these practices to continue." *Compare, e. g., Duncan* Complaint, ¶ 11 *with Kaplan* Amended Complaint, ¶¶ 34(a), (b), 179(a), (b). Similarly, whereas Count III of the *Kaplan* Amended Complaint alleges that certain pre-April 24, 1978, acquisitions by defendants violated Section 7 of the Clayton Act, 15 U.S.C. § 18, Count IV of the *Duncan* Complaint alleges the same basic violation resulting from post-April 24, 1978, acquisitions. And Count VI of the *Duncan* Complaint realleges for the post-April 24, 1978, period essentially the same derivative claim that the Amended Complaint in *Kaplan* asserts for the period prior to that. The other allegations in the *Kaplan* Amended Complaint, which are not included in *Duncan,* either do not extend beyond April 24, 1978 (*see Kaplan* Amended Complaint, Count II) or have been resolved in favor of defendants (*see, e. g., Kaplan* Amended Complaint, Count IV).

6. These claims are set forth in the Schedule of Issues, II.B.5–9, filed with this Court on January 15, 1981. The Schedule of Issues was the subject of an order by this Court dated February 4, 1981.

action. Thus, the Court turns to the various claims for lost profits.

■ With but one exception, defendants' alleged refusals to permit plaintiffs to operate Sealy plants in locations other than their areas of primary responsibility took place after April 24, 1978. In light of the Court's ruling that plaintiffs may seek no relief for the period after April 24, 1978, the motion must be denied as to those alleged refusals.[7] The one pre-April 24, 1978, alleged refusal, involving an attempted location in Las Vegas, presents a different problem. Although the conduct is clearly within the time period covered by the complaint, the question remains whether plaintiffs should be permitted to assert that claim now, more than three years after the conduct allegedly occurred and nearly one-and-one-half years after they filed an amended complaint in this action. The Court believes that the lengthy delay in alleging damages for conduct known to plaintiffs, the additional discovery that this claim would require, and the new factual issues that would be injected into this litigation provide ample justification for denying the motion to amend the pleadings to include a claim for damages stemming from the attempted location in Las Vegas. *King v. Motor Freight Express, Inc.*, Civil Case No. 78 C 4133 (N.D.Ill., March 18, 1980). This is particularly so in view of plaintiffs' complete failure to explain its conduct. Accordingly, the Court denies the motion as to the Las Vegas plant location as well.

Plaintiffs' belated attempt to seek lost profits for defendants' alleged refusal to permit them to operate competitor plants falls within the same reasoning. In their proposed Second Amended and Supplemental Complaint, plaintiffs allege this restraint was imposed as part of the Licensing Contract adopted in April, 1975, shortly after the jury verdict in the 1971 litigation. ¶ 46. Thus, plaintiffs possessed the information upon which they now base their motion to amend the pleadings when they filed their original complaint in 1976 as well as the amended complaint in 1979. The additional discovery that inevitably would result from the inclusion of new factual issues, as well as plaintiffs' failure to explain this delay, persuades the Court that this portion of the motion must be denied.

Finally, plaintiffs seek to amend the pleadings to include damages resulting from defendants' alleged refusal to permit them to operate "no-name" plants in locations other than their areas of primary responsibility prior to September 11, 1979, the date when defendants voluntarily abandoned this restraint. Proposed Second Amended and Supplemental Complaint, ¶ 66(a). The only reference to a "no-name" plant in the proposed pleading, however, is with regard to plaintiffs' 1980 attempt to operate the Pacifica plant in San Diego. ¶¶ 57, 58. Inasmuch as the Court has ruled that plaintiffs may not seek relief for the period subsequent to April 24, 1978, the motion is denied as to this "no-name" plant. Moreover, to the extent the proposed pleading can be read to allege a refusal of permission to operate a "no-name" plant prior to April 24, 1978, the Court notes that plaintiffs could have asserted that conduct in their Amended Complaint filed in October, 1979. Again, the additional discovery the new factual issues would require, along with plaintiffs' failure to explain their[8] delay in making this allegation, convince the Court that the motion must be denied on this ground as well.

---

7. In their Proposed Second Amended and Supplemental Complaint, plaintiffs apparently allege post-April 24, 1978, refusals with respect to St. Louis, Salt Lake City, San Diego, Seattle, and New York City. The Court's ruling, of course, precludes plaintiffs from seeking to include in this litigation any other post-April 24, 1978, refusals as well.

8. In pointing out the plaintiffs' failure to explain their delay in asserting damages for lost profits stemming from their inability to operate Sealy plants, competitor plants, or "no-name" plants outside of plaintiffs' areas of primary responsibility, the Court does not mean to suggest that this failure is a necessary prerequisite to its decision denying the motion to amend. The other factors mentioned, standing alone, provide ample justification for the Court's ruling.

To summarize, plaintiffs' motion to extend the temporal scope of this litigation beyond April 24, 1978, is denied.[9] Plaintiffs' motion to include elements of damage not asserted in the Amended Complaint presently on file is also denied.[10] Finally, defendants are ordered to file within twenty days an amended counterclaim limiting the period for which damages are sought to that ending April 24, 1978.[11] It is so ordered.

---

**9.** In its order concerning the Schedule of Issues, the Court observed that its ruling on the time frame of this litigation would determine whether plaintiffs could seek relief in Counts I and III of the *Kaplan* Amended Complaint for post-April 24, 1978, acquisitions by defendants. *Ohio-Sealy Mattress Manufacturing Co. v. Sealy, Inc.,* 90 F.R.D. 35 at 38, 39 (N.D.Ill. 1981). As a result of the Court's decision today, it is clear that plaintiffs may seek relief for post-April 24, 1978, acquisitions by defendants, if at all, only in the *Duncan* case.

**10.** Defendants, in opposition to plaintiffs' motion, also have argued that certain of the proposed amendments are frivolous on their face and thus should not be permitted, and that all of the proposed amendments have been made in bad faith. The Court's decision today renders it unnecessary to express a view on these assertions.

