669 F.2d 490
 1982-1 Trade Cases 64,507
 OHIO-SEALY MATTRESS MANUFACTURING COMPANY, Sealy Mattress
Company of Houston, Sealy Mattress Company of Puerto Rico,
Inc., and Sealy Mattress Company of Georgia, Inc.,
Plaintiffs-Appellants, Cross-Appellees,
v.
SEALY, INCORPORATED, Sealy Spring Corporation-Indiana, Sealy
Spring Corporation-East, Sealy Spring Corporation-West,
Sealy Mattress Company of Colorado, Inc., Sealy Mattress
Company of Northern California, Inc., Sealy Mattress Company
of Southern California, Inc., Schnorr Manufacturing Company,
Inc., Sealy Mattress Company of Florida, Inc., Sealy
Mattress Company of Pittsburgh, Inc., and Sealy Mattress
Company of Philadelphia, Inc., Defendants-Appellees, Cross-Appellants.
 Nos. 81-1542, 81-1615.
 United States Court of Appeals,
Seventh Circuit.
 Argued Nov. 30, 1981.
Decided Jan. 29, 1982.
 
 Frederic F. Brace, Jr., P. C., Brace & North, Chicago, Ill., for plaintiffs-appellants, cross-appellees.
 Phil C. Neal, Friedman & Koven, Chicago, Ill., for defendants-appellees, cross-appellants.
 Before SPRECHER and BAUER, Circuit Judges, and FAIRCHILD, Senior Circuit Judge.
 BAUER, Circuit Judge.
 
 
 1
 This is the second appeal in this antitrust suit. Ohio Sealy Mattress Manufacturing Company ("Ohio") filed suit against Sealy, Incorporated ("Sealy") in 1971 alleging that Sealy was engaged in a scheme to allocate markets in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1. Ohio sought legal and equitable relief. After a four month trial, the jury returned a $6,814,852 verdict for Ohio. Sealy filed post-trial motions for judgment notwithstanding the verdict and for a new trial. The district court denied both motions, conditioning the denial of Sealy's motion for a new trial on Ohio's acceptance of a fifty percent remittitur. Ohio accepted the remittitur. The court then conducted hearings on Ohio's request for equitable relief and entered final judgment denying all equitable relief and awarding Ohio trebled, remitted damages of $10,222,278.
 
 
 2
 Both Ohio and Sealy appealed from the judgment of the district court. We affirmed the remitted jury award and reversed the court's denial of equitable relief. We remanded with instructions to the district court to reconsider whether equitable relief should be awarded. Ohio Sealy Mattress Mfg. Co. v. Sealy, Inc., 585 F.2d 821, 844-45 (7th Cir. 1978), cert. denied, 440 U.S. 930, 99 S.Ct. 1267, 59 L.Ed.2d 486 (1979).
 
 
 3
 On remand, Ohio moved the district court to reinstate the remitted portion of the judgment. Ohio also requested that the court award it supplemental damages. The district court denied both motions. After conducting an evidentiary hearing at which Sealy and Ohio introduced expert testimony concerning whether equitable relief was warranted and, if so, what type of relief would be appropriate, the district court enjoined Sealy from continuing most of the conduct which Ohio claimed were components of Sealy's unlawful market allocation scheme.
 
 
 4
 Ohio appeals and Sealy has filed a contingent cross-appeal. We affirm the judgment of the district court and dismiss Sealy's cross-appeal.
 
 
 5
 * Defendant Sealy owns trademarks for the "Sealy" brand of bedding products which it licenses independent manufacturers to use. The license agreement assigns each licensee a geographic area of primary responsibility ("APR"). The agreement provides that no other licensee will be permitted to manufacture Sealy products in a licensee's APR. Additionally, the licensee is authorized to manufacture Sealy products only at the location(s) specified in the license agreement and at any additional locations that Sealy might later approve in writing. The licensee is responsible for promoting Sealy sales in its APR, but it is also permitted to sell Sealy products in other licensees' territories. If a licensee sells Sealy products outside its APR, it must pay two types of out-of-APR charges. First, it is required to pay passover payment charges to cover its share of promotional expenses in the APR. This payment is designed to prevent free-rider problems. The licensee is further required to pay a warranty repair service charge designed to cover the cost of repairs the invaded licensee might have to make on the other licensee's Sealy products. The license agreement includes a clause granting Sealy the right of first refusal should a licensee wish to sell its business. The agreement also forbids the licensee from acquiring any interest in a competitive organization.
 
 
 6
 Ohio claims that Sealy used the aforementioned license provisions to achieve a division of markets. Ohio concedes that these license provisions may be lawful in and of themselves, but argues that they are unlawful if used as part of a scheme to allocate markets. Ohio claims that Sealy unlawfully exercised its right of first refusal in 1972 to prevent Ohio from acquiring the Florida, Philadelphia, and Pittsburgh licensees as part of the illegal market allocation scheme. Ohio contends that the neighboring licensees feared that if Ohio obtained the three licensees it would engage in vigorous intrabrand competition that the neighboring licensees sought to avoid.
 
 
 7
 The jury was instructed that it could find for Ohio only if it found that Sealy was engaged in an unlawful scheme to allocate markets. The jury did so find and awarded Ohio more than $6 million damages. Although the jury returned a general verdict, the amount of the verdict "makes it a mathematical certainty that the jury found at least one of Sealy's first-refusal acquisitions ... to have violated the antitrust laws." 585 F.2d at 844.
 
 
 8
 In the first appeal, Sealy claimed that the district court erred in denying its motion for judgment notwithstanding the verdict because Ohio had failed to introduce sufficient evidence from which a reasonable jury could have found an antitrust violation. After carefully reviewing the record, we concluded that there was sufficient evidence to support the jury finding that Sealy had used the challenged license provisions to achieve an unlawful division of markets. We held that the district court did not err in denying Sealy's motion.[1]
 
 
 9
 Sealy also claimed that the court erred in denying its motion for a new trial on the condition that Ohio accept a fifty percent remittitur. The district court held that remittitur was necessary to cure the effects of Ohio's counsels' prejudicial misconduct which led the jury to award excessive damages. Sealy claimed on appeal that the court should have granted a new trial because counsels' misconduct may also have led the jury to err in finding an antitrust violation at all. Sealy argued that the effect of any prejudice could not be said to have been confined solely to the damage award.
 
 
 10
 In deciding Sealy's claim, we noted that although Ohio was foreclosed "from seeking reinstatement of the 50% remitted now that Sealy attacks the remittitur on appeal," Ohio could argue in defense of its judgment that the district court erred in remitting the verdict. Id. at 840. After reviewing the record, we concluded that there had been no prejudicial misconduct. Id. at 843. Therefore, Sealy was not entitled to a new trial. We held that the court did not err in denying Sealy's motion for a new trial, and we affirmed the remitted jury award.
 
 
 11
 We reversed the judgment, however, to the extent that the district court had refused to award Ohio equitable relief. In denying equitable relief, the district court had assumed that the jury had found only that at least one of Sealy's right of first refusal acquisitions was unlawful. Given that the jury was instructed that it could find Sealy's use of the right of first refusal unlawful only if it found that the right was used as part of an unlawful scheme to allocate markets, the jury must also have found that Sealy was engaged in an unlawful market allocation scheme. Id. at 844. We remanded with instructions to the district court to reconsider "what total mix of equitable relief, if any, might be just in the circumstances," given that Sealy had been found to have engaged in an unlawful scheme to allocate markets. Id. at 845 n.34.
 
 II
 
 12
 Ohio appeals the district court's denial of its motion for reinstatement of the remitted portion of the judgment. Ohio claims that the district court was bound on remand to enforce our mandate and opinion, in which we held that there had been no prejudicial misconduct necessitating a new trial or remittitur. Ohio contends that the district court should have corrected its erroneous ruling by restoring the remitted portion of the judgment. We disagree.
 
 
 13
 Indeed, on remand the district court was required to follow the mandate of this court. Banker's Life & Casualty Co. v. Bellanca Corp., 308 F.2d 757, 759 (7th Cir. 1962). Our opinion set forth the law of the case to be enforced by the district court. Hayes v. Thompson, 637 F.2d 483, 487 (7th Cir. 1980). Accord, SEC v. Advance Growth Capital Corp., 539 F.2d 649, 650-51 (7th Cir. 1976). We held that Ohio was foreclosed "from seeking reinstatement of the 50% remitted." 585 F.2d at 840. We further held that the final judgment, insofar as it awarded Ohio $10,222,278 the remitted amount, was affirmed. We instructed the district court to award post-judgment interest and to reconsider whether equitable relief should be awarded. Id. at 847. Thus, our mandate instructed the district court to enforce satisfaction of the remitted judgment. The court was not empowered to reinstate the jury verdict.
 
 
 14
 Moreover, even if our mandate had not specifically precluded reinstatement of the remitted portion of the judgment, Ohio is estopped from seeking restoration of the full jury award. A plaintiff who accepts a remittitur rather than risk a new trial may not later challenge the validity of the remittitur order. Donovan v. Penn Shipping Co., Inc., 429 U.S. 648, 97 S.Ct. 835, 51 L.Ed.2d 112 (1977) (per curiam). This estoppel rule applies even where the district court's grant of a new trial would have been reversed if the plaintiff had refused to accept the remittitur and had appealed the order granting the defendant a new trial. Lewis v. Wilson, 151 U.S. 551, 555, 14 S.Ct. 419, 420, 38 L.Ed. 267 (1894).
 
 
 15
 The district court did not err in denying Ohio's motion for reinstatement of the remitted portion of the judgment.III
 
 
 16
 On remand, Ohio filed a motion requesting the district court to award it supplemental damages. Ohio claims that some of the damages it seeks were caused by Sealy's pre-verdict antitrust conduct. The rest of the damages were allegedly caused by unlawful post-verdict conduct. The district court denied the motion on the ground that Ohio had two pending lawsuits against Sealy in which it is seeking to recover these damages.[2] Ohio claims that the district court erred in denying its motion and erred in failing to hold an evidentiary hearing.
 
 
 17
 The short answer to Ohio's claim is that to the extent that its causes of action against Sealy are not barred by res judicata, Ohio may file new suits to recover the alleged damages. We agree with the district court, however, that Ohio is not entitled to recover the damages in this lawsuit.
 
 
 18
 In the context of a continuing scheme to violate the antitrust laws, a cause of action accrues to the plaintiff each time the defendant engages in antitrust conduct that harms the plaintiff. Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 338, 91 S.Ct. 795, 28 L.Ed.2d 77 (1971); Lawlor v. National Screen Service Corp., 349 U.S. 322, 328, 75 S.Ct. 865, 868, 99 L.Ed. 1122, reh. denied, 401 U.S. 1015, 91 S.Ct. 1250, 28 L.Ed.2d 552 (1955). At the time of accrual, the plaintiff is entitled to recover all damages caused by the antitrust conduct, including damages that will be suffered during and after trial. Zenith Radio Corp. v. Hazeltine Reseach, Inc., 401 U.S. at 339, 91 S.Ct. at 806. If, however, future damages that might be suffered after trial are speculative or their nature and amount unprovable at the time of trial, the cause of action for these damages has not yet accrued, and the plaintiff may thereafter sue the defendant to recover these future damages when they accrue. Id. On the other hand, if the future damages are not speculative at the time of trial, the plaintiff's cause of action concerning those damages has accrued and he must seek to recover them at trial. Res judicata bars the plaintiff from splitting his cause of action; once he sues, he must seek all the damages that have then accrued as a result of the defendant's antitrust conduct. Id.
 
 
 19
 If the defendant continues the same scheme to violate the antitrust laws after trial, a new cause of action accrues to the plaintiff for any damages caused by the defendant's post-verdict antitrust conduct. Lawlor v. National Screen Service Corp., 349 U.S. at 327-28, 75 S.Ct. at 868. In that instance, the plaintiff is entitled to file a new lawsuit to recover these post-verdict damages. Id.
 
 
 20
 Part of the damages Ohio seeks were allegedly caused by Sealy's pre-verdict antitrust conduct. Ohio admits that it made a "litigation choice" when it filed this suit not to seek future damages caused by Sealy's pre-verdict antitrust conduct. If these alleged future damages could have been proven at trial, Ohio is barred by principles of res judicata from attempting to recover them in this or any other lawsuit. If, however, these alleged damages were not provable at trial, Ohio has an independent cause of action which it may now pursue in another, separate lawsuit. For those damages that Ohio seeks which were caused by antitrust conduct occurring after the verdict in this case, Ohio has an independent cause of action that it may pursue in another lawsuit. Lawlor v. National Screen Service Corp., 349 U.S. 322, 75 S.Ct. 865, 99 L.Ed. 1122 (1955).
 
 
 21
 We need not decide which, if any, of the supplemental damages Ohio now seeks are barred by res judicata. We hold only that to the extent Ohio has any valid causes of action against Sealy for these damages, Ohio is required to seek their recovery in another lawsuit. The district court did not err in denying Ohio's motion for supplemental damages. The court also did not err in failing to conduct an evidentiary hearing on this issue since Ohio was not entitled to supplemental damages in this suit as a matter of law.
 
 IV
 
 22
 We remanded this case to the district court with instructions to decide "what total mix of equitable relief, if any" should be awarded. 585 F.2d at 845 n.34. After conducting an additional equity hearing, the district court entered a decree enjoining Sealy from: (1) collecting passover payments and warranty repair charges for out-of-APR sales; (2) enforcing the plant-location clause; (3) enforcing the no-competitive-interests clause; (4) using the right of first refusal clause for an anticompetitive purpose; (5) placing any additional restrictions on approval of license transfers; and (6) tying mattress components to the Sealy trademarks. Ohio appeals from this decree, claiming that the court erred in failing to order divestiture of the Florida, Philadelphia, and Pittsburgh licensees to Ohio and in failing to enjoin Sealy from enforcing the exclusive manufacturing territory clause.
 
 
 23
 An equitable decree in a private antitrust suit should award the plaintiff injunctive relief only to the extent necessary to protect it from future damage likely to occur if the defendant continues the unlawful antitrust conduct. 15 U.S.C. § 26.[3] "The key to the whole question of an antitrust remedy is of course the discovery of measures effective to restore competition." United States v. DuPont & Co., 366 U.S. 316, 326, 81 S.Ct. 1243, 1250, 6 L.Ed.2d 318 (1961). The decree should be designed to ensure that the defendant will not continue the specific illegal practice. International Salt Co., Inc. v. United States, 332 U.S. 392, 401, 68 S.Ct. 12, 17, 90 L.Ed. 20 (1947). The "specific illegal practice" found in this case was a scheme to allocate markets. Thus, the decree in this case should be designed to restore competition by preventing Sealy from continuing to divide its bedding sales markets. After careful review of the record we are convinced that the district court's decree will effectively restore competition and protect Ohio from any further "threatened loss or damage" caused by Sealy's market allocation scheme.
 
 
 24
 First, Ohio claims that the court erred in failing to order divestiture of the Florida, Philadelphia, and Pittsburgh licensees which Sealy acquired by exercising its right of first refusal when Ohio sought to purchase these licensees.[4] Ohio's plea for divestiture presents an issue of first impression in this circuit. To the best of our knowledge, only two district courts in the Ninth Circuit have ordered divestiture as part of the equitable relief in a private antitrust suit. In both instances, the award was reversed on appeal. See Calnetics Corp. v. Volkswagen of America, Inc., 532 F.2d 674, 692 (9th Cir.), cert. denied, 429 U.S. 940, 97 S.Ct. 355, 50 L.Ed.2d 309 (1976); ITT Corp. v. GTE Corp., 518 F.2d 913, 920 (9th Cir. 1975), on remand, 449 F.Supp. 1158 (D.Hawaii 1978). We note that the Ninth Circuit, after carefully reviewing the legislative history of section 16 of the Clayton Act,[5] held that Congress did not intend to include divestiture as part of the injunctive relief available in a private suit. ITT Corp. v. GTE Corp., 518 F.2d at 921-24. We need not decide today, however, whether divestiture is ever available in a private antitrust suit. We hold only that the district court did not err in refusing to award divestiture in this case.
 
 
 25
 After Sealy acquired the Florida, Philadelphia, and Pittsburgh licensees, Ohio acquired the Randolph, Massachusetts and the Atlanta, Georgia licensees. The APRs of these two licensees are near the Philadelphia and Florida APRs respectively. Similarly, Ohio's Medina, Ohio plant is located near the Pittsburgh APR. As it now stands, Sealy and Ohio are able to engage in vigorous intrabrand competition in these markets areas. If we ordered divestiture, Ohio would be the exclusive Sealy manufacturer in these areas and the amount of intrabrand competition would likely decrease.[6] Given that the remedy in this case should restore competition, not diminish it, divestiture would be inadvisable. The district court did not err in failing to order divestiture of these three licensees.[7]
 
 
 26
 Ohio also claims that the district court erred in failing to enjoin Sealy from enforcing its exclusive manufacturing territory clause. The district court was required to enjoin enforcement of this clause only if necessary to prevent future allocation of sales markets. In our first decision in this case we noted that
 
 
 27
 the local nature of the mattress business and the exclusive manufacturing areas used by Sealy really do little more than set the stage for the balance of the restraints attacked. Any licensee could, e.g., engage in significant intrabrand competition at least with his neighboring licensees if Sealy's restraints went no further.
 
 
 28
 585 F.2d at 828. The district court's decree enjoined Sealy from enforcing all the other challenged license restraints. In so doing, the district court opened the market to permit at least "significant intrabrand competition among neighboring licensees." Of course, permitting Sealy to enforce the exclusive manufacturing clause may prevent Ohio from competing effectively in every APR. Our goal in framing an equitable decree, however, is not to ensure that Ohio attains every competitive advantage it seeks. Rather, we seek only to ensure that our decree will restore intrabrand competition as a whole. We are convinced that the decree in this case will achieve this result.
 
 V
 
 29
 For the reasons stated in this opinion, we affirm the judgment of the district court and dismiss Sealy's contingent cross-appeal.
 
 
 30
 AFFIRMED.
 
 
 
 [1]
 We further held, however, that the district court should have directed a verdict in Sealy's favor concerning Ohio's claim that Sealy's national accounts program and collection of royalties for sale of non-Sealy products were unlawful. 585 F.2d at 839. Ohio claimed damages of $400,000 resulting from these two programs. We found that the court's error in failing to direct a verdict on these issues was harmless in view of the court's remittitur of the damage award by $3 million. Id. at 836-39
 
 
 [2]
 Ohio has two suits pending against the Sealy directors in the Northern District of Illinois: Ohio-Sealy Mattress Mfg. Co. v. Kaplan, 90 F.R.D. 40, and Ohio-Sealy Mattress Mfg. Co. v. Duncan, No. 79 C 2741
 
 
 [3]
 15 U.S.C. § 26 makes injunctive relief available to a private antitrust plaintiff to prevent "threatened loss or damage by a violation of the antitrust laws."
 
 
 [4]
 On remand Ohio sought leave to introduce a document purported to be an itemization of the jury's verdict in support of its contention that Ohio is entitled to divestiture of the Florida and Philadelphia licensees. Ohio claims that the court erred in denying its motion
 It is axiomatic that a jury's deliberations are confidential and the court must not permit either party to challenge the validity of a verdict by examining individual jurors "as to any matter or statement occurring during the course of the jury's deliberations." Rule 606, Fed.R.Evid. Ohio claims that rule 606 is not dispositive of its motion because it was not challenging the validity of the verdict; rather it was seeking clarification concerning precisely what the jury decided. If Ohio wished to know precisely which issues the jury found in its favor, it should have requested a special verdict. Rule 49, Fed.R.Civ.P. In fact, Ohio initially did suggest that the court request a special verdict on which equitable relief could be predicated, but at the close of trial, Ohio's counsel did not submit special verdict forms. "Neither a trial court nor an appellate court has the authority to inquire into the jury's decisional processes, even when information pertaining to the deliberations is volunteered by one of the jurors." Domeracki v. Humble Oil & Refining Co., 443 F.2d 1245, 1247 (3d Cir.), cert. denied, 404 U.S. 883, 92 S.Ct. 212, 30 L.Ed.2d 165 (1971). The district court did not err in denying Ohio's motion to admit the document in question.
 
 
 [5]
 15 U.S.C. § 26. See note 3 supra
 
 
 [6]
 We realize that ordering divestiture of the Florida, Philadelphia, and Pittsburgh licensees to Ohio would not necessarily cause a total lack of intrabrand competition since other Sealy licensees could still make out-of-APR sales in these territories. We believe, however, that divestiture would cause an overall decrease in intrabrand competition in these areas, a result we wish to avoid
 
 
 [7]
 Ohio claims that it is entitled to monetary relief if divestiture is denied. We disagree. Ohio presented its claim for money damages caused by Sealy's acquisition of the three licensees to the jury. In fact, the amount of the jury verdict establishes as a "mathematical certainty" that the jury did indeed award damages for at least one of Sealy's first refusal acquisitions. 585 F.2d at 844. To the extent that any future damages caused by these acquisitions were speculative at trial, Ohio may sue Sealy for their recovery in a separate lawsuit when the damages accrue. To the extent that these damages were provable at trial, Ohio is estopped to seek them now or in a subsequent lawsuit. See discussion in subsection III, supra